REGAN, Judge.
The plaintiff, Metal Cutting Specialty Company, Inc., filed this suit against the defendant, Maryland Casualty Company, its insurer, under an all risk insurance policy endeavoring to recover the sum of $5,000.00 which it asserts it lost as the result of damage sustained to the boom of a link belt crane.
The defendant answered and admitted the existence of the policy, but denied that the plaintiff was entitled to recover under the terms thereof for the reason that the damage incurred by it was encompassed by specific exclusions contained in the contract of insurance.
From a judgment in favor of the defendant dismissing the plaintiff’s suit, it has prosecuted this appeal.
The record discloses that plaintiff’s employee, Roland Nunez, was the operator of a link belt crane which had been leased from another company for the purpose of moving heavy pieces of steel. Nunez left the crane with the motor idling and entered a building on the plaintiff’s premises for some unexplained reason. When he returned, the boom had lashed back against the cab of the crane, causing extensive damage to the boom.
The only testimony offered at the trial hereof was that which was introduced on behalf of the plaintiff. Herman Becker, the plaintiff’s plant superintendent, recounted that he first observed the crane when the boom was being pulled over by the control cables and the operator was not in the cab. He was the first person to reach the crane after the accident, and asserted that he thought the gear lever was in a neutral position. This conclusion was confirmed by Nunez, who testified that when he left the cab, the gear lever was in a neutral position and locked. The only testimony to the contrary was that of George *791 Higgins, the plaintiff’s president. He related that when he arrived on the scene, the gear lever was engaged in the “up” position.
The testimony with respect to the cause of the accident was supplied primarily by Nunez and Becker. Becker explained that the boom could rise slowly to an upward position by itself if there existed a hydraulic malfunction in the mechanism of the crane. More significantly, Nunez testified that there was a leak in the hydraulic system, and he notified the company when he observed it. He explained that a leak in the hydraulic line would permit air to enter, thereby causing a hydraulic failure so that there would be no pressure to keep the boom in a downward position. He additionally related that there was a hydraulic failure because even if he had left the gear lever in a running position, the upward movement of the boom is so slow, when the motor is idling, that he would have time to go to the shop building, get a drink or pick up a pack of cigarettes, and still be back in time before the boom would be in an upright position.
It is significant that no other testimony of any nature was offered by either party to establish the cause of the boom’s malfunction. The defendant rested its case without offering any evidence whatever, predicating its defense entirely on the exclusions contained in the policy. The following exclusion, in our opinion, is the one •which is pertinent to the facts hereof:
“10. (g) loss, damage or expense caused by or resulting from wear and tear, mechanical or electrical breakdown or failure, inherent vice, latent defect, gradual deterioration or depreciation, * * * unless fire or explosion ensues * *
There is no dispute that the boom lashed back against the cab, and after an analysis of the record, we are convinced that the hydraulic system contained a leak and was, therefore, defective. The preponderance of the plaintiff’s evidence establishes that the gear lever was in a neutral position when the boom rose and lashed back over the cab. Consequently, the only reasonable conclusion which may be drawn from the evidence adduced herein is that the damage was caused by a mechanical failure of the equipment. Such a failure is an excluded risk under the terms of the policy, and any damage caused thereby does not entitle the plaintiff to recovery.
The plaintiff insists that the crane operator’s absence from the crane was an “external cause” which was the proximate cause of the damage. In support of this contention, he points to the Florida case of Hawk-eye-Security Insurance Company v. Iori Bros,[1] wherein the court reasoned that a lash back of the boom of the crane similar to the circumstances of this case was the result of an external cause since it was occasioned by the “black out” of the crane operator. It is obvious that the facts and rationale of that case are not applicable to the facts hereof since the Hawkeye case did not involve a crane with a mechanical defect such as existed in this case.
To reiterate, the inevitable conclusion to be drawn from the record herein is that the damage to the plaintiff’s crane was caused by a mechanical defect in the hydraulic system thereof. Therefore, the loss is completely encompassed by the exclusionary provision of the defendant’s contract of insurance which, of course, prevents the plaintiff from recovering any damages as a result of the loss which formed the subject matter of this litigation.
For the foregoing reasons, the judgment of the lower court is hereby affirmed.
The plaintiff is to pay all costs of this proceeding.
Affirmed.

. 106 So.2d 916 (Fla.App.1958).