**FARMERS CHEMICAL ASSOCIATION, Inc., Plaintiff-Appellee,**
v.
**MARYLAND CASUALTY COMPANY, Defendant-Appellant.**

**FARMERS CHEMICAL ASSOCIATION, Inc., Plaintiff-Cross-Appellant,**
v.
**MARYLAND CASUALTY COMPANY, Defendant-Cross-Appellee.**
**Nos. 19108, 19109.**

United States Court of Appeals
Sixth Circuit.
Jan. 29, 1970.

Jac Chambliss and Sizer Chambliss, Chattanooga, Tenn., Chambliss, Hodge, Bahner & Crawford, Chattanooga, Tenn., of counsel, for Farmers Chemical Assn.

Blake Moore, Chattanooga, Tenn., Spears, Moore, Rebman & Williams, Chattanooga, Tenn., of counsel, for Maryland Casualty Co.

Before WEICK, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PECK, Circuit Judge.

These appeals arise from a suit involving an insurance claim. The first docketed appeal is directed against a judgment entered in favor of insured, while the second challenges the refusal of the District Judge to allow interest prior to the date of the judgment. Farmers Chemical Association operates an ammonia processing plant and, during the period here involved, was insured under an "all-risk business interruption" policy issued by Maryland Casualty Company. The parties will hereinafter usually be referred to as "Farmers" and "Maryland Casualty" respectively.

The business interruption upon which the claim involved in the first appeal is based was occasioned by the failure of the builder of Farmers' plant to conform to the specifications in the construction of a "transition piece," a steel pipe through which pass gases at high temperatures and pressure. Although the plans specified that the transition piece be lined inside with insulation which would reduce the temperatures to which the steel would be subjected, the contractor placed insulation on the outside of the transition piece, resulting in a raising of the temperatures to which the steel was subjected. Because of this improper insulation, the transition piece became overheated, buckled, and developed leaks. As a consequence, Farmers was forced to suspend operations for approximately ten days until the damaged transition piece could be repaired.

In pertinent part, the business interruption policy issued to Farmers by Maryland Casualty provides:

"1. This policy is to cover only against loss resulting directly from necessary interruption of business at the Farmers Chemical Plant located in Chattanooga, Tenn., caused by damage to or destruction of real or personal property, except finished stock, by the perils insured against, during the term of the policy.

"2. PERILS INSURED.

(a) All risks of physical loss of or damage to the insured property from any cause except as is hereinafter excluded.

"3. THIS POLICY DOES NOT INSURE AGAINST LOSS OR

DAMAGE CAUSED BY OR RESULTING FROM:

\*    \*    \*    \*    \*    \*

(b) Error, omission or deficiency in design, specifications, workmanship, or materials, unless fire or other accidents otherwise recoverable hereunder ensues and then only for such ensuing loss or damage."

The District Court, on the question of liability, granted a summary judgment in favor of Farmers. Concerning the issue of damages, the District Judge determined the loss to be $35,655.31 and entered judgment of that amount. Because the claim was considered to have been unliquidated, the District Court denied interest on the loss prior to judgment.

Concerning the issue of liability, both parties agree that the failure to properly insulate the transition piece constituted an "error, omission or deficiency in design, specifications, workmanship or materials" under the policy. A loss caused by such error is excluded from the perils insured against in the policy "unless fire or other accidents otherwise recoverable [under the policy] ensues." The question thus becomes whether another accident recoverable under the policy ensued.

Farmers contends that another accident did ensue upon which liability can be predicated. Under Farmers' interpretation of the policy, the faulty placement of insulation constituted the "error" and Maryland Casualty would not be expected to indemnify Farmers for any business interruption which might have been necessitated had Farmers closed the plant to correct the builder's error in workmanship. However, the subsequent breaking of the transition piece allegedly constituted the other accident which ensued as a result of the original error. Since this other accident was responsible for the business interruption and was one recoverable under the policy, Farmers maintains that the loss falls within the exception to the exclusion of perils insured against and is therefore covered under the policy.

Maryland Casualty views the "error" as including not only the faulty placement of insulation but also the breaking of the transition piece and contends that in order for any loss to be recoverable, a further fire or other accident must ensue subsequent to the breaking of the transition piece. Under Maryland Casualty's interpretation, this further fire or accident must result in damage to property other than the transition piece. Then, only the business interruption occasioned by the damage to this other property would be recoverable.

■ While it may be persuasively argued that Farmers' interpretation of the policy is the more reasonable, the language here involved is at best ambiguous. Therefore, in line with well-established rules of construction,\* we hold that the ambiguity must be resolved in favor of the insured and affirm the District Court's judgment imposing liability on Maryland Casualty. It is interesting to note that summary judgment was first entered in favor of Maryland Casualty in the District Court, and that that judgment was vacated and judgment for Farmers was entered upon reconsideration. The fact that an experienced District Judge reached divergent consecutive conclusions concerning the

---

\* *See, e. g.*, Burdett Oxygen Co. v. Employers Surplus Lines Insurance Co., 419 F.2d 247 (6th Cir., decided December 10, 1969); Space Conditioning, Inc. v. Insurance Company of America, 419 F.2d 836 (6th Cir., decided January 13, 1970); Fidelity & Deposit Company v. Friedlander, 101 F.2d 106 (6th Cir. 1939); American Central Life Insurance Company v. American Trust Company, 5 F.2d 71 (6th Cir.), cert. denied, 269 U.S. 559, 46 S.Ct. 20, 70 L.Ed. 411 (1925); American Casualty Company v. Cutshall, 205 Tenn. 234, 326 S.W.2d 443 (1959); Alvis v. Mutual Benefit Health & Accident Association, 201 Tenn. 198, 297 S.W.2d 643 (1956).

policy provision in question lends support to our determination as to its ambiguity.

■■ Turning to the second appeal, it is first noted that in a diversity case such as this, Federal Courts are bound by state law on the question of interest prior to judgment. *See, e. g.,* Klaxon Company v. Stentor Electric Manufacturing Company, 313 U.S. 487, 495–496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Glens Falls Insurance Company v. Danville Motors, Incorporated, 333 F.2d 187, 191 (6th Cir. 1964). By statute, Tennessee provides that "All * * * liquidated and settled accounts * * * shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned." Tennessee Code Annotated, Section 47–14–107. This rule applies to claims arising under insurance contracts as well as claims arising under other contracts. *See, e. g.,* Knights of Pythias v. Allen, 104 Tenn. 623, 631, 58 S.W. 241, 243 (1900); Peoples Bank & Trust Company v. United States Fidelity & Guaranty Company, 156 Tenn. 517, 521, 3 S.W.2d 163, 164 (1928). If the instant claim is considered to be a liquidated or settled account, interest must be allowed under the statute from the time the claim became payable.

■ It has been held that a claim becomes liquidated and settled when the amount due is fixed by law or has been ascertained and agreed upon by the parties. Arco Company v. Garner & Company, 143 Tenn. 262, 266, 227 S.W. 1025, 1026 (1920); Third National Bank v. American Equitable Insurance Company, 27 Tenn.App. 249, 178 S.W.2d 915 (1943). If, for example, the insurance policy here in question had provided for the payment of a specific sum per day for every day that the plant was closed and contained no stipulation barring interest, the claim would be one which would be liquidated under the statute. The measure of recovery under this policy, however, is:

"[T]his Company shall be liable for the ACTUAL LOSS SUSTAINED by the assured resulting directly from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace with such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, excluding payroll expense, to the extent necessary to resume operations of the assured with the same quality of service which existed immediately preceding the loss."

"Gross Earnings" is further defined as follows:

"For the purposes of this insurance 'Gross Earnings' are defined as the sum of:

(a) Total net sales value of production,

(b) Total net sale of merchandise, and

(c) Other earnings derived from operation of the business, less the cost of:

 (d) Raw stock from which such production is derived,

 (e) Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the service(s) sold by the assured,

(f) Merchandise sold, including packaging materials therefor, and

(g) Service(s) purchased from outsiders (not employees of the assured) for resale which do not continue under contract.

"No other costs shall be deducted in determining Gross Earnings. In determining Gross Earnings due consideration shall be given to the experience of

the business before the date of damage or destruction and the probable experience thereafter had no loss occurred."

The amount of this claim was not ascertained or agreed upon by the parties at any time prior to judgment, and various positions, after long delays, were taken by Farmers with respect to the amount of the loss. Computation of specific amounts was particularly difficult in light of the fact that the plant had been in operation only a short time before the interruption occurred. Since Farmers' claim cannot be considered to have been liquidated and settled within the meaning of the statute, Farmers is not entitled to interest prior to judgment as a matter of right.

The fact that the claim does not fall within the terms of the statute making interest mandatory does not preclude the granting of interest; in Tennessee the granting or withholding of interest prior to judgment in cases not falling under the statute is within the discretion of the trial judge. *See, e. g.,* Owen v. Holdway, 57 Tenn.App. 713, 425 S.W.2d 623 (1967); Thayer v. Wright Company, 50 Tenn.App. 515, 362 S.W.2d 805 (1961); Akers v. J. B. Sedberry, Incorporated, 39 Tenn.App. 633, 286 S.W. 2d 617 (1955); Phoenix Insurance Company v. Jordan, 28 Tenn.App. 11, 184 S.W.2d 721 (1944).

In the instant case, the trial judge held that the allowance of interest prior to judgment would, as a matter of equity, be improper on the record and particularly in light of the above-mentioned facts concerning the long delays and Farmers' various positions on the amount of the loss. We conclude that no abuse of discretion occurred in this regard. Therefore, we affirm the action of the District Court in denying interest prior to judgment.

Affirmed.