**LAKE CHARLES HARBOR & TERMINAL DISTRICT, Plaintiff–Appellee,**

v.

**IMPERIAL CASUALTY & INDEMNITY CO. and Granite State Insurance Company, Defendants–Appellants.**

**No. 88–4006.**

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1988.

from our discussion, *supra,* of the *Mallis* and *Hanson* cases.

**12.** The opinion was captioned "Judgment."

Gary L. Boland, Baton Rouge, La., for defendants-appellants.

Michael K. Dees, Lake Charles, La., for plaintiff-appellee.

Before WISDOM, GEE, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Once more we must teach the lesson that an insurance policy should be written in plain, unambiguous, and understandable language. Applying the usual state law rule that ambiguous insurance policies are construed against the insurer, in this diversity case we affirm a judgment refusing to give effect to an exclusion whose words, read literally, are meaningless.

## I.

On July 4, 1983, a cable snapped on a shiploader at the Lake Charles Harbor and Terminal District Bulk Terminal causing extensive damage to the loader. At the time of the accident an experienced operator controlled the loader, but the cable had worn out, and, when it broke, it sent a heavy shuttle crashing into the interior of the loader.

Lake Charles Harbor & Terminal District (Lake Charles) then filed a claim under its insurance policies with Imperial Casualty and Indemnity Company and Granite State Insurance Company, but the companies refused to pay. The policies covered "[a]ll risks of direct physical loss or damage," but the companies maintained that the accident fell within the "mechanical breakdown" exclusion. The exclusion provides:

This Policy DOES NOT INSURE AGAINST loss caused by:

\* \* \* \* \* \*

2. Mechanical or machinery breakdown; unless an insured peril ensues, and then only for the actual loss or damage caused by such ensuing peril.

In this interlocutory appeal under 28 U.S.C. § 1292(b), the central question is the meaning of this exclusion, and particularly of the phrase "unless an insured peril ensues." The parties agree that a mechanical breakdown of the ship loader's cables caused the damage, and that the policies exclude coverage for the costs of replacing and repairing the cables. However, Lake Charles contends that the damage to the ship loader was a separate "ensuing peril," i.e., an insured risk of physical loss, while the insurers assert that, because a mechanical breakdown was the "but for" cause of the accident and the ship loader itself sustained all of the damage, no "insured peril ensue[d]."

Patently, the meaning of the exclusion cannot be discerned merely from the words used. Relying principally on the testimony of the broker who drafted the insurance policies, the district court found that the usual purpose of a mechanical breakdown exclusion is to exclude routine and minor maintenance from insurance coverage. The exclusion is not designed to insulate an insurance company from liability for major or "catastrophic" losses, but only from serving as "a warrantor or service contractor of the equipment of the insured." Accordingly, the court ruled that the "cata-

strophic" consequences of the ship loader accident were covered. The district court reached this conclusion without construing the exclusion against the insurers, moreover, because it concluded that Lake Charles had participated in drafting the policies.[1]

## II.

At first glance, the exclusion at issue here appears to be self-contradictory gibberish—it begins by excluding mechanical breakdowns from coverage, yet concludes by allowing compensation for all risks that ensue from such a breakdown. After industry practice has been consulted the exclusion becomes more comprehensible, but the question at issue here—whether catastrophic damage to a machine resulting from an initial mechanical breakdown constitutes an "ensuing" peril—remains open to dispute. Consequently, the insurers' initial argument that the exclusion is plain and unambiguous is unconvincing, and the exclusion must be interpreted according to the applicable state law rules of construction.

█ Under Louisiana law, an insurance policy is construed against the insurers unless it was drafted by the insured.[2] Doubts are resolved in favor of coverage.[3] Lake Charles's policies were drafted by an insurance broker who received no compensation from Lake Charles and did not serve as its agent.[4] Although the broker did discuss the terms of the policies with Lake Charles before negotiating with the insurers, there is no indication that it enjoyed superior bargaining power or was able to dictate the terms of the policy. Accordingly, there is no reason to make an exception to the usual rule of construction against the insurers.

█ Whatever "ensuing peril" may mean, nothing in the policies indicates that catastrophic damage to a machine caused by its own mechanical breakdown cannot be included within the term. Therefore, once doubts are resolved in Lake Charles's favor, its assertion that the ship-loader accident was an insured ensuing peril must be accepted. Lake Charles's position is of course further reinforced by the insurance broker's testimony that "mechanical breakdown" exclusions usually are intended to exclude minor maintenance rather than catastrophic damage.

Although there is no Louisiana case directly on point, other courts have reached similar conclusions in analogous cases. In *Macon Light House Revival Center, Inc. v. Continental Insurance Co.*,[5] the collapse of a roof compressed the air inside the underlying structure so forcefully that the structure exploded. Explosions, but not structural defects, were insured risks. Applying Georgia law, the court held that the explosion was an ensuing risk within the coverage provided by the policy, even though the explosion was caused by an uninsured risk and arguably was inseparable from it.[6] Also, in *Farmers Chemical Association v. Maryland Casualty Co.*,[7] a business was forced to suspend operations for approximately ten days because a pipe overheated, then buckled and leaked, as a result of poorly installed insulation. The applicable insurance policy covered business interruptions, but excluded errors in design or workmanship " 'unless fire or other accidents otherwise recoverable here-

**1.** See *Lake Charles Harbor & Term. D. v. Imperial Casualty,* 670 F.Supp. 189 (W.D.La.1987).

**2.** See, e.g., *Calcasieu–Marine Nat. Bank v. American Employers' Ins. Co.,* 533 F.2d 290, 295 (5th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 58 L.Ed.2d 289 (1976); *Rodriguez v. Northwestern Nat. Ins. Co.,* 358 So.2d 1237, 1241 (La.1978).

**3.** *Calcasieu,* 533 F.2d at 295; *Borden, Inc. v. Howard Trucking Co.,* 454 So.2d 1081, 1090 (La. 1983); *Benton Casing Service, Inc. v. Avemco Ins. Co.,* 379 So.2d 225, 232 (La.1979). *See also Taylor v. Security Industrial Ins. Co.,* 454 So.2d 1260, 1263 (La.App.1984).

**4.** *Cf. Halpern v. Lexington Ins. Co.,* 558 F.Supp. 1280, 1283–84 (E.D.La.1983), *affirmed,* 715 F.2d 191 (1983).

**5.** 651 F.Supp. 417 (M.D.Ga.1987).

**6.** *Id.* at 420–21. *See also Jersey Ins. Co. of New York v. Heffron,* 242 F.2d 136, 139–40 (4th Cir. 1957).

**7.** 421 F.2d 319 (6th Cir.1970).

under ensues.' " [8]  Noting that "[t]he question thus becomes whether another accident recoverable under the policy ensued," [9] the Sixth Circuit, applying Tennessee law, concluded: "[w]hile it may be persuasively argued that Farmers' interpretation of the policy is the more reasonable, the language here involved is at best ambiguous. Therefore, in line with well-established rules of construction, we hold that the ambiguity must be resolved in favor of the insured." [10]

In contrast, *Metal Cutting Specialty Co. v. Maryland Casualty Co.,* [11] cited as "controlling" by the insurers, is inapposite. That case concerned damage caused when the boom on a crane lashed back into the cab of the crane because of a mechanical failure during the crane operator's absence. The insurance policy at issue excluded " 'loss, damage or expense caused by ... mechanical or electrical breakdown ... unless *fire or explosion* ensues.' " [12]  The Louisiana court held that "the loss is completely encompassed by the exclusionary provision of the defendant's contract of insurance." [13]  However, there was absolutely no evidence in *Metal Cutting* that a *fire or explosion* ensued from the mechanical breakdown. If a mechanical-breakdown exclusion that did not limit the class of insured ensuing perils had been at issue in *Metal Cutting*—indeed, if the exclusion had been identical to the exclusion in the instant case—the insured in *Metal Cutting* should have recovered.

### III.

Lake Charles's insurance policies covered all risks except those explicitly excluded from coverage, and excluded coverage for mechanical breakdowns only when no "insured peril ensue[d]." Lake Charles might reasonably have assumed that the catastrophic damage to its ship loader was an insured ensuing peril, and absent a clear and intelligible exclusion in the policies, the

**8.** *Id.* at 321.

**9.** *Id.*

**10.** *Id.* (footnote omitted).

**11.** 227 So.2d 790 (La.App.1969).

insurers cannot take shelter in ambiguities. The judgment of the district court therefore is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.

**12.** *Id.* at 791 (emphasis added).

