John E. Gunter, Glen D. Aaron, II, Midland, TX, for plaintiff-appellant.

Richard D. Davis, Jr., Kristi F. Hyatt, Cotton, Bledsoe, Tighe & Dawson, Midland, TX, for defendant-appellee.

Before POLITZ, Chief Judge, GARWOOD, Circuit Judge, and PARKER,* District Judge.

PER CURIAM:

Milton O'Bryant appeals the summary judgment dismissal of his claims based on a conclusion by the district court that the Americans with Disabilities Act (ADA) is not retroactive.

O'Bryant's complaint is based on actions allegedly taken by the defendant City of Midland in July 1990 and in July 1991 as a result of a disabling injury O'Bryant sustained in October 1989. Congress specifically made the ADA effective with respect to state and local governments as of January 26, 1992. The statute becomes effective as to private employers, depending on the number of employees, either on July 26, 1992, or July 26, 1994. O'Bryant's complaint was filed on September 28, 1992.

Persuaded that Congress did not intend retroactivity for the ADA and perceiving no basis for concluding otherwise, we hold that

* Chief Judge of the Eastern District of Texas, sitting by designation.
* This decision was originally issued as an "unpublished decision" filed on August 31, 1993. On

**LIBBEY–OWENS–FORD COMPANY, Plaintiff–Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant–Appellee.**

No. 92–3488.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1993.

Decided Aug. 31, 1993.*

David A. Nelson, Circuit Judge, filed concurring opinion.

October 22, 1993, the court designated the opinion as one recommended for full-text publication.

Donald F. Melhorn (argued and briefed), Marshall & Melhorn, Toledo, OH, for plaintiff-appellant.

Susan Condon, Edward M. Kay (argued and briefed), James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, James R. Jeffery, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, OH, defendant-appellee.

Before: NELSON and SUHRHEINRICH, Circuit Judges; and EDMUNDS, District Judge.**

EDMUNDS, District Judge.

Libbey–Owens–Ford Co. (LOF) is a manufacturing company that uses float-glass furnaces in its production process. When one of its furnaces became damaged, LOF was forced to shut it down. As a result, LOF filed a claim under an all-risk insurance policy issued by Insurance Company of North America (INA). INA denied coverage, contending that the wear and tear provision of the policy excluded coverage. LOF brought suit for coverage, but lost at a jury trial. Post-trial, LOF moved for judgment as a matter of law, to alter or amend the judgment, and for a new trial on damages alleging that the wear and tear exclusion did not apply. The district court denied the motion.

LOF appeals, and the appeal was fully briefed and argued. For the following reasons, we affirm the decision of the district court.

## I.

LOF manufactures glass at its North Carolina plant, utilizing a float-glass furnace in the manufacturing process. The furnace is heated to temperatures between 2,950 to 3,000 degrees Fahrenheit. Materials are put into the furnace to create molten glass, which is then conditioned, put into a float bath, stretched to the desired thickness, and given a fire polished finish. Inside the furnace are refractory blocks that protect the internal steel plates of the furnace from the heat. When exposed to the high heat, the steel oxidizes. After a float-glass furnace is operated for some time, the refractory blocks and the steel plates deteriorate.

In November 1986, LOF observed that a portion of the breast wall of the furnace was leaning and partially detached, a dangerous condition. In January 1988, after various unsuccessful attempts at repair had been made while the furnace was still operating, LOF shut down the furnace for repair and rebuilding. Production resumed when the furnace was repaired in April of 1988.

LOF filed a claim under its all-risks insurance policy to cover damages caused by the furnace shut down, claiming coverage for the cost of rebuilding the furnace and for business interruption. The INA insurance policy provided for worldwide coverage of LOF's property. Paragraph 5 of the Policy provided for all-risks coverage, stating: "This Section insures against all risks of direct physical loss of, or damage to, property described herein ... except as hereinafter excluded." (Trial Exhibit 300, Policy, p. 13 [hereinafter Policy] ). However, paragraph 7 of the Policy excluded coverage for certain perils, including for wear and tear as follows:

This policy does not insure:

d. against wear and tear, deterioration, rust, corrosion or erosion, contamination,

** The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

leakage of contents, inherent or latent defect, moths, vermin or insects, dampness or dryness of atmosphere, extremes or changes of temperature, smog, smoke, vapor or gas from agricultural or industrial operations; unless such loss is caused directly by physical damage not otherwise excluded in this policy to the property covered, or to premises containing such property....

Policy, p. 14.

INA denied LOF's claim on the basis that the furnace was damaged by wear and tear, which is excluded from policy coverage. LOF disputed the denial of coverage, contending that the furnace was damaged due to the negligence of LOF's employees. When the dispute could not be resolved, LOF filed suit for breach of contract. INA asserted the wear and tear exclusion clause as an affirmative defense.

The matter was tried before a jury between November 20, 1991 and December 16, 1991.[1] After deliberating, the jury returned a verdict for INA in the form of the following answers to interrogatories:

*Interrogatory No. 1.* Do you find from the preponderance of the evidence that the # 1 float glass furnace sustained direct physical loss and damage between June 1, 1986 and June 1, 1987?

#### ANSWER: Yes

*Interrogatory No. 2.* Do you find from a preponderance of the evidence that the problem with the south breastwall was caused by wear, tear, deterioration, corrosion, or erosion?

1. The jury was impaneled and sworn on November 18, but trial proceedings did not begin until November 20. Senior Judge Nicholas J. Walinski presided over the first eleven days of trial, at which time he became seriously ill and could not continue. On December 11, the parties stipulated to let Magistrate Judge James G. Carr complete the trial. Judge Carr then presided over the last few days of trial, including discussions regarding jury instructions and final arguments, as well as post-trial proceedings.

2. In 1991, Federal Rule of Civil Procedure 50 was amended to refer to motions for directed verdict and motions for judgment notwithstanding the verdict as motions for "judgment as a

#### ANSWER: Yes

Upon answering "yes" to Interrogatory No. 2, the jury was instructed to go no further. After trial, LOF filed a motion for judgment notwithstanding the verdict[2] on the basis that the wear and tear exclusion did not apply, or to alter or amend the judgment to find that LOF suffered a loss covered by the policy and for a new trial on damages. The district court denied the motion, reasoning that LOF had waived its motion for j.n.o.v. because LOF failed to move for directed verdict on the inapplicability of the exclusion.[3] LOF appeals from the judgment and from the district court's denial of its post-trial motion.

The issues on appeal are (1) whether the district court erred in ruling that LOF's post-trial motion for judgment as a matter of law was barred due to LOF's waiver of this issue; (2) whether the district court erred in submitting the wear and tear issue to the jury; and (3) whether the district court committed plain error.

### II.

■ Although LOF claims to have preserved the argument that the wear and tear exclusion clause was inapplicable, INA has insistently advanced the claim that LOF waived this argument from the time LOF filed its first post-trial motion. At the hearing on LOF's motion for j.n.o.v., the district court indicated its concern that LOF had waived the argument now raised on appeal: "That's what I think we are talking about, how substantial must, how hard must somebody tug on the coat, the hem of the Court's

matter of law." Thus, LOF's post-trial motion for a judgment as a matter of law would be called a motion for j.n.o.v. under the old terminology.

In order to bring a j.n.o.v. motion, a party first must have brought a directed verdict motion. Fed.R.Civ.Pro. 50(b). This raises an issue of waiver, which is contested in this case. Thus, here it is important to distinguish between a motion for directed verdict and a motion for j.n.o.v. As a result, we use the old terminology.

3. LOF did move for a directed verdict, only on the issue of coverage for business interruption.

robe?" (Tr. of Post–Trial Hearing, p. 58). The court indicated:

> My, and that's the problem that I have, Mr. Melhorn, it seems to me that, I think the question here is whether this issue, although it may have been asserted on a couple of occasions, whether it was really presented either to, to either Judge Walinski or to me in a substantial enough way that alerted either of us to its significance and called for a ruling either before, during, before or during the trial or during the course of presenting the charge to the jury. That's the problem I have. It may have been among those things that during the course of the proceedings were referred to, but whether it was done in a manner sufficient to say hey, wait a minute, we have to get a ruling on this now because it affects the course and direction of the trial. It does go to what's relevant and what's not relevant, what witnesses should be called, what testimony should be taken and what the jury should be asked to decide.

*Id.* at 57.

■ Upon a review of the entire record, this Court agrees that LOF failed to sufficiently "tug on the hem of the court's robe." Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure,[4] a party may move post-trial for judgment notwithstanding the verdict provided that the party moved for a directed verdict after the close of the evidence. *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514 (6th Cir.1990). "It is too late to complain of the submission of an issue to the jury after a litigant has taken a chance on what the jury will do and after the jury has resolved the issue against him." *Cunningham v. Olson Drilling*, 171 F.2d 392 (5th Cir.1948). A party who has failed to move for a directed verdict cannot request the district court to rule on the sufficiency of the evidence supporting a verdict against him

nor can he raise this issue on appeal. *Portage II*, 899 F.2d at 1522.

■ This waiver rule serves to protect litigants' Seventh Amendment right to a trial by jury. *Lowenstein v. Pepsi–Cola Bottling Co. of Pennsauken*, 536 F.2d 9, 11 (3d Cir. 1976), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). In addition, the rule discourages courts from reweighing the evidence simply because they feel that the jury could have reached another result. Further, the rule serves to prevent "tactical victories at the expense of substantive interests." *Id.* (citations omitted). Requiring a motion for directed verdict prior to a motion for j.n.o.v. enables the defending party to cure defects in his proofs. *Id.*

■ Although courts have taken a liberal view of the formal requirements for bringing a solely legal issue before the Court by way of motion for directed verdict, *Kladis v. Brezek*, 823 F.2d 1014, 1017 (7th Cir.1987), a generalized objection is insufficient to satisfy the Rule 50(b) requirement. A litigant must still present to the court a motion which clearly sets forth the theory on which the moving party bases his claim and which asks the court to resolve the issue. *Kladis*, 823 F.2d at 1017; *Lowenstein*, 536 F.2d at 11–12; Fed.R.Civ.Pro. 50(a).

> As aptly stated by the Third Circuit:
> The provisions of the rule are clear. The lock has a large visible keyhole and the key to turn the lock is as plainly described as we believe to be possible. The rule has been in effect for a very considerable length of time. We do not see any reason to obfuscate a plain rule by adding a gloss to it to aid those who, for reasons unknown to us, have not seen fit to follow it.

*Lowenstein*, 536 F.2d at 12. Thus, LOF's failure to move for a directed verdict, either expressly or in a manner that otherwise would alert the trial court to the need to treat the issue raised as a motion for directed

---

4. Rule 50(b) provides:
   Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal question raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative.

verdict, precluded consideration of a judgment n.o.v., and the district court did not err in denying the motion.

### III.

■ This Court must still consider, however, whether the District Court was correct in denying LOF's motion for new trial. *U.S. for Use and Benefit of Roper, IBG v. Reisz,* 718 F.2d 1004, 1007 (11th Cir.1983). One ground for a new trial is the submission to the jury of an issue not appropriate for its consideration. *Id.* To preserve this issue for appeal, the appellant must have requested that the district court remove the contested issue from the jury or must have objected to the jury instructions regarding the contested issue. *Id.*

■ Pursuant to Federal Rule of Civil Procedure 51,[5] objections regarding jury instructions must be made at the trial level in order to preserve such objections for appeal. *Mark Seitman & Assoc. v. R.J. Reynolds Tobacco Co.,* 837 F.2d 1527, 1530 (11th Cir. 1988); *Batesole v. Stratford,* 505 F.2d 804, 808 (6th Cir.1974). Such objections must be sufficiently specific to enable the trial court to follow them if well taken. *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." *Id.* at 119, 63 S.Ct. at 483. *Accord Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479 (6th Cir.1973) (alleged errors in jury charge not properly before appellate court because appellant did not distinctly state issue objected to and grounds for objection). Moreover, a party cannot state one ground for objection during trial and then state a different ground for objection on a motion for new trial or appeal. *Coastal Distributing v. NGK Spark Plug Co. Ltd.,* 779 F.2d 1033, 1039 (5th Cir.1986). This circuit requires that a formal objection be made before and after the jury instructions are given, unless "it is plainly apparent from the discussion between the parties and the judge that the

judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission." *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1237 (6th Cir.1992).

■ LOF requests that the judgment should be altered and a new trial on damages should be granted because, by its terms, the wear and tear exclusion clause did not apply, and the jury never should have been asked to consider its applicability. Paragraph 7(d) of the Policy excluded coverage for "wear and tear ... unless such loss is caused directly by physical damage not otherwise excluded in this policy...." LOF argues that "such loss" refers to loss from wear and tear and that "damage otherwise excluded" applies to exclusions other than those listed in paragraph (d). As a result, LOF asserts that, purely as a matter of law, the wear and tear exclusion does not apply to losses caused directly by physical damage, unless such physical damage was elsewhere excluded. Since INA did not claim any exclusion other than the wear and tear provision applied, LOF claims that the jury's inquiry should have terminated after they answered the first interrogatory, which stated, "Do you find from the preponderance of the evidence that the #1 float glass furnace sustained direct physical loss and damage between June 1, 1986 and June 1, 1987?" In sum, LOF contends that the district court erred by propounding the second interrogatory, "Do you find from a preponderance of the evidence that the problem with the south breastwall was caused by wear, tear, deterioration, corrosion, or erosion?"

INA contends that LOF waived this issue by failing to bring it before the District Court for ruling during the course of the trial; LOF contends that it preserved the issue by raising it in its trial brief and in objections to jury instructions.

In resolving this issue, this Court notes preliminarily that there is nothing intrinsically inconsistent about the legal position advanced by LOF on this appeal and the factual position LOF took during the trial. LOF

---

5. Rule 51 provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

could have asked the trial court for a ruling on the inapplicability of the wear and tear exclusion at any time without prejudicing its argument that the damage to the south breastwall was caused by negligence rather than deterioration. Given that, LOF offers no satisfactory explanation for its failure to request resolution of this legal issue in a manner which would have prompted a ruling by the trial court before the jury returned its verdict.

LOF did address the inapplicability of the wear and tear exclusion in its trial brief, but explicitly declined to request a ruling on the issue, stating, "But whether it will have to be tried and submitted to the jury in view of what seems to us to be indisputable evidence of the damage to Furnace No. 1, are matters the Court will consider at the proper time." LOF's Trial Brief at 36. Similarly, the issue was raised obliquely in written and oral objections to jury instructions, but never with the clarity and specificity which would have alerted the trial court that a legal ruling was in order.[6]

LOF never seems to have found the "proper time," as it anticipated in its trial brief, to request a ruling on the applicability of the wear and tear exclusion. LOF did not move for a directed verdict on this issue nor request a ruling in a manner that could be construed to be a directed verdict motion. LOF did not move for summary judgment that the wear and tear exclusion was inapplicable, did not move to strike INA's affirmative defense based on the wear and tear exclusion, and did not move for a ruling in limine that evidence of wear and tear was

irrelevant. Instead, the record reflects that LOF tried the case on the theory that the furnace was not damaged by wear and tear but was damaged by the negligence of LOF employees; LOF acknowledged at trial that this was a jury issue.[7] LOF's attorney argued to the court:

> So there certainly is evidence in the record that would indicate or permit a finding that the furnace just didn't die of old age. Now, certainly, Mr. Marcus [INA's attorney] has cited his evidence for that contention, but it is a jury issue, it is not a court issue, that is why we are here with a jury trial.

Tr. V, p. 1219–19.

There is no indication that LOF ever asked the trial court for a ruling on this legal issue or that the trial court was ever aware of the need for such a ruling. LOF's failure to specifically and directly object to the jury instructions, thereby demanding a ruling from the trial court, constituted a waiver of the objection. The district court did not err in instructing the jury.

## IV.

Regardless of whether the alleged error was brought to the attention of the trial court, this Court may review the jury charge in the case of plain error. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).

Federal courts have recognized a narrow exception to the general prohibition of Rule 51 in cases where an objection would have been a mere "formality" under the circumstances ... or where the error was

---

6. LOF and INA provided Judge Carr with a draft of instructions which they prepared together, Tr. V., p. 1219–106–07 and Tr.Supp. to p. 1310, pp. 3–4, but which LOF later declined to characterize as an "agreed" set. (Tr.Supp. to p. 1310, pp. 4–5). During a long bench conference on instructions, which extended over parts of two days, LOF never argued that the wear and tear exclusion should not be submitted to the jury; rather, counsel asked for an amendment to interrogatory # 2, which request was subsequently withdrawn. (Tr. pp. 1219–144 & 1219–148). Before the court instructed the jury, LOF made a general objection to the instructions in which it referred to the exclusion issue raised in its trial brief, but did not press the court for a ruling on the issue. Further, LOF's written requests for

final jury instructions do not ask for a ruling on the legal issue, but rather presume that INA would not have presented sufficient evidence concerning wear and tear to withstand a directed verdict motion.

7. Specifically, LOF argued to the court:

> That is when the structural failure actually happened and the wall dropped. Now, it is our theory that this was caused not by ordinary processes of wear and tear, but by the happenstance and, indeed, the carelessness of cutting away on gussets and failing to tend the tuck space during the overcoat job. So the LOF theory is that is when the damage occurred.

Tr. V, p. 1219–22.

"obvious and prejudicial" and required action by the reviewing court "in the interests of justice."

*Batesole*, 505 F.2d at 808 (citations omitted). Yet, even if LOF had not waived its motion for judgment n.o.v. and its objection to the jury instructions, and even if this Court reviews the jury instructions for plain error, LOF's appeal lacks merit because the wear and tear exclusion in fact does apply. LOF misinterprets the clause.

▮▮▮▮ Both LOF and INA claim that the policy is unambiguous and should be interpreted according to its plain and ordinary meaning. Under Ohio law,[8] courts are required to give unambiguous contract provisions their plain meaning. *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 167, 462 N.E.2d 403, 406 (1984). Exclusion clauses are held to exclude only that which is clearly intended to be excluded, and at the same time a court may not change the obvious intent of a provision in order to impose coverage. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (1992), *cert. denied*, — U.S. —, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993). In this case, however, the parties disagree as to the "plain" meaning of the exclusion clause.

As discussed above, LOF contends that the wear and tear exclusion clause should not have been applied. LOF argues that the unless clause of paragraph 7(d), excluding coverage for "wear and tear ... *unless such loss is caused directly by physical damage not otherwise excluded in this policy ...*" refers to loss from wear and tear not excluded by other sections of the policy. Under LOF's interpretation, the unless clause is an exception to an exclusion that effectively swallows the exclusion. Since no other exclusion provision applies, LOF claims that the direct physical damage to the furnace

should be covered. Thus, the court should have asked the jury only the first interrogatory, "Do you find from the preponderance of the evidence that the # 1 float glass furnace sustained direct physical loss and damage ...?"

INA construes the exclusion consistently with those few courts that have interpreted exclusion clauses similar to the one at issue. In *Adams–Arapahoe Joint School District No. 28–J*, 891 F.2d 772 (10th Cir.1989), an architect used concrete instead of steel in construction of a roof, even though corrosion was known to occur when concrete was attached to metal roof beams. A part of the roof collapsed, and inspection showed extensive corrosion. The school district filed a claim under its all-risks insurance policy. The policy excluded coverage for rust and corrosion "unless such loss results from a peril not excluded in this policy." The Tenth Circuit held that the policy covered the district's loss because, although loss from corrosion was excluded, the loss resulted from corrosion caused by defective construction, which was covered by the policy. That is, the excluded loss resulted from a covered risk. *Id. Accord Nat'l Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501 (Tex. Ct.App.1989) (where all-risks policy excluded coverage of loss caused by corrosion "unless resulting from a peril insured against," corrosion from faulty design was covered); *Adrian Assoc., General Contractors v. Nat'l Surety Corp.*, 638 S.W.2d 138 (Tex.Ct.App.1982) (where all-risks policy excluded coverage of loss from subsidence "unless such loss results from a peril not excluded," subsidence caused by underground water of artificial origin was covered because peril was not excluded), *aff'd per curiam*, 650 S.W.2d 67 (Tex.1983).

It follows, then, that where the excluded event is the only cause of the loss, the loss is

---

8. Ohio law applies to the interpretation of the insurance policy in this case. Federal courts sitting in diversity must apply the conflicts of law rules of the state in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This is an appeal from the Northern District of Ohio. Under Ohio law, courts apply the Restatement 2d contacts test to determine the rights of parties to a contract. *Gries Sports Enter. v. Modell*, 15

Ohio St.3d 284, 473 N.E.2d 807 (1984) (adopting Restatement (Second) of Conflicts of Law § 188 (1971)), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Because LOF's place of business is in Ohio and the insurance policy was negotiated through, and premiums were made to, a business located in Ohio, Ohio law applies. *See Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 487 N.E.2d 568 (1986).

not covered. In *Peery v. Security Ins. Co.,* No. 83–185 II, 1984 Tenn.App. Lexis (Tenn. Ct.App. Apr. 6, 1984), the court construed an all-risks policy that excluded coverage for damage due to wear and tear "unless any such loss or damage is the direct result of other physical damage covered by this policy." The court held that the loss was not covered because there was no showing that the loss occurred from any reason other than wear and tear.[9] *See also Adams,* 891 F.2d at 777 ("policy still excludes losses due to corrosion with no identifiable non-excluded cause.")

LOF cites *Lake Charles Harbor & Terminal Dist. v. Imperial Casualty & Indemnity Co.,* 857 F.2d 286 (5th Cir.1988) and *Farmers Chemical Ass'n v. Maryland Casualty Co.,* 421 F.2d 319 (6th Cir.1970) in support of its interpretation of the exclusion clause. These cases are inapposite because. they construe "ensuing loss" clauses,[10] not unless clauses like the one at issue here. *Adams,* 891 F.2d at 777 n. 3 (cases construing ensuing loss clauses not applicable). LOF's argument is additionally unpersuasive because, while LOF argues that the unless clause is unambiguous and should be interpreted according to its plain meaning, LOF also contends that cases that find in favor of the insured due to the ambiguity of the policy should be applied, citing *Lake Charles, Farmers Chemical,* and *Burdett Oxygen Co. v. Employers Surplus Lines Ins. Co.,* 419 F.2d 247 (6th Cir.1969).

The policy should be interpreted as described in *Adams, Nat'l Fire Ins. Co., Adrian,* and *Peery.* This interpretation gives effect to the plain meaning of the exclusion instead of the tortured interpretation advanced by LOF, which would render the exclusion clause meaningless. In order to

recover under the policy, LOF's loss must have resulted from a covered risk and not only from wear and tear. Accordingly, the instructions to the jury were proper and the trial court's denial of the motion for j.n.o.v. was proper.

### V.

For the reasons stated, the decision of the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring.

I agree that we must affirm the judgment in favor of the insurance company, but I reach that conclusion by a somewhat different route.

It seems to me that the insured party, LOF, probably did preserve its argument that the policy's wear and tear exclusion was inapplicable. LOF objected to the failure to give its requested jury instructions, and Requested Instruction No. 4 would have directed the jury "to disregard all of the terms and provisions of the Policy which mention exceptions, or exclusions of coverage." The instruction would then have gone on to say in so many words that "[t]hose terms and provisions do not apply in this case."

In addition to objecting to the trial court's failure to charge that none of the policy's exclusions was applicable, LOF lodged a general objection to the instructions that were given insofar as such instructions were inconsistent with those that had been requested. And LOF then tugged at the hem of the trial court's robe as hard as it needed to, in my view, when it made the following very specific objection to the content of the court's instructions: "First, we object to the inclu-

---

9. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.,* 818 F.2d 591 (7th Cir. 1987). In *Arkwright,* the court construed an insurance exclusion clause that excluded coverage for corrosion "unless physical damage not otherwise excluded" resulted. Although the thrust of the opinion deals with the issue of the meaning of the word "corrosion," the court did address the insured's contention that the damage was not due to natural corrosion but was due to negligence of its employees, the same contention that LOF made at trial. The court found that the employee negligence merely resulted in opera-

tion of the equipment at a temperature conducive to corrosion. While the court did not expressly address the unless clause, it implied that the damage was simply from corrosion, not from some other risk covered by the policy.

10. An ensuing loss clause provides, for example, that the policy excludes loss caused by mechanical breakdown, "unless an insured peril ensues, and then only for the actual loss or damage caused by such ensuing peril." *Lake Charles,* 857 F.2d at 287.

sion of the Court's instruction on wear and tear, *which we contend is not a theory that ought to be in the case."* (Emphasis supplied.)

LOF's real problem is not that it failed to preserve this contention, but that the contention has no merit. The applicability of the wear and tear exclusion was clearly a question for the jury, and the framework in which the trial court's instructions presented the question clearly passed muster under the language of the insurance contract.

The trial court identified three issues in the relevant portion of its charge. First, the jury was told, LOF bore the burden of proving "direct physical loss and damage to the # 1 float glass furnace...." This instruction was proper under paragraph 5 of the policy. Second, the jury was told, the insurance company bore the burden of proving its affirmative defense—the defense that the loss was the result of "wear and tear, deterioration, rust, corrosion or erosion...." This instruction was proper under the exclusion contained in paragraph 7(d). Third, the jury was told, the affirmative defense was subject to an exception (as to which the burden of proof rested on LOF) for wear and tear "caused directly by physical damage...." This instruction was likewise proper under paragraph 7(d) of the policy.

The jury was then told that its verdict should be for plaintiff LOF if it found that LOF had proved direct physical damage and that the insurance company had failed to prove its affirmative defense. If the jury found that the affirmative defense had been proved, on the other hand, it was told that its verdict should be for the defendant.

The trial court's three-step instructions were not simply a matter of marching up the hill and down again. The jury could well have found that although the detachment of the breastwall constituted direct physical damage to LOF's property, it also constituted wear and tear not itself caused by physical damage. LOF tried to show that the breastwall would not have become detached if careless repairmen had not physically damaged the supporting steelwork, but the jury was entitled to find—and presumably did find—that the detachment of the breastwall

constituted wear and tear caused by the operation of the furnace rather than by negligent repair work.

I say that this is "presumably" what the jury found; the qualification is necessary because the special verdict form allowed the jury to decide in favor of the defendant on the basis of only two interrogatories. "If your answer [to Interrogatory No. 2, which asked whether the problem with the breastwall was caused by wear and tear] is 'Yes,'" the jury was told, "it will not be necessary for you to answer any of the remaining interrogatories." Perhaps it would have been better if the verdict form had asked the jury to answer a third interrogatory: whether the wear and tear was caused by physical damage. LOF did not request that such an interrogatory be included, however, and in view of the jury instructions described above, I am comfortable with the conclusion that by answering Interrogatory No. 2 in the affirmative, the jury was saying that the defendant should win on its affirmative defense; the defendant should win, in other words, because the damage that was found to have occurred constituted wear and tear not caused by physical damage to the steelwork.

LOF argues on appeal that the wear and tear exclusion was inapplicable to loss caused directly by physical damage. The policy did, to be sure, afford LOF coverage for wear and tear caused directly by physical damage, but we have no reason at all to suppose that the jury considered the wear and tear on the south breastwall to have been caused by anything other than the normal operation of the furnace. The jury's finding of direct physical loss for purposes of paragraph 5 cannot be equated with a finding of causation for purposes of paragraph 7(d).