106 F.3d 402
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Debra Corsi WILLIAMS, Plaintiff-Appellee,
v.
Lester R. DEVIES, Individually and Lester R. Devies,
Administrator of the Estate of Ida J. Devies,
Defendants-Appellants.
 No. 95-3985.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1997.
 
 Before: WELLFORD, RYAN, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, Lester R. Devies and Estate of Ida J. Devies (the "Devieses"), appeal judgment for the plaintiff, Debra Corsi, in this action for housing discrimination. Specifically, the Devieses challenge the sufficiency of the evidence and the district court's evidentiary decisions and jury instructions. They also appeal the court's denial of their motion for sanctions. For the following reasons, we AFFIRM the decision of the district court.
 
 I. BACKGROUND
 
 2
 Lester Devies and his mother, Ida Devies,[1] Caucasian, were partners for over twenty years in the ownership and operation of rental units consisting of five duplexes located in Akron, Ohio. Corsi, a Caucasian female, signed a month-to-month rental agreement that was to begin on July 15, 1990 for one of the Devieses' units. On May 10, 1991, Lester filed an eviction action against Corsi, alleging nonpayment of rent. Prior to the eviction hearing, Corsi moved from the rental premises and Lester dismissed the suit.
 
 
 3
 Corsi and Othie Williams brought the instant action, alleging violations of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, and state fair housing statutes, breach of contract, malicious prosecution, and intentional infliction of emotional distress.[2] Specifically, they alleged that the Devieses discriminated against Corsi for her association with Williams, an African-American male. Corsi dated Williams when she was living at the Devieses' rental unit.[3]
 
 
 4
 At trial, the court granted the Devieses' motion for a directed verdict as to Corsi's claims of malicious prosecution, intentional infliction of emotional distress, and partial breach of contract. The court sent Corsi's FHA and breach of contract claims to the jury.[4] The jury found for the Devieses on the breach of contract claim and for Corsi on the FHA claim and awarded Corsi $15,000 in compensatory damages and $20,000 in punitive damages.
 
 II. DISCUSSION
 A. Damages
 
 5
 The compensatory damages award was not against the manifest weight of the evidence. Corsi produced both direct and circumstantial evidence from which a jury could have reasonably concluded that the Devieses intentionally discriminated against Corsi because of her association with Williams.[5]
 
 
 6
 The jury award of compensatory damages was not excessive. The court instructed that actual out-of-pocket expenses is but one element of a compensatory damages award. It further instructed that, if the Devieses were liable, the jury could consider actual damage, emotional distress, embarrassment, and humiliation in awarding compensatory damages.[6] The dismissal of Corsi's intentional infliction of emotional distress and malicious prosecution claims did not extinguish Corsi's allegations of emotional distress, embarrassment, or humiliation.
 
 
 7
 The Devieses argue that, because the court dismissed Corsi's claims of malicious prosecution and intentional infliction of emotional distress, there was no basis on which to award punitive damages. However, "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." FED.R.CIV.P. 51. Because the Devieses failed to raise any objection to the jury instructions in regard to punitive damages, they cannot now assert that there was no basis on which to award punitive damages.
 
 B. Conduct of Counsel
 
 8
 Corsi's counsel did not engage in improper trial tactics nor was the Devieses' defense in any way prejudiced. The three alleged attempts to introduce excluded documents appear to have resulted from a misunderstanding of the court's instructions or unintentional oversights on the part of Corsi's counsel. The Devieses' claim that Corsi's counsel introduced facts known to be false is wholly unsupported by the record. Likewise, their contention that Corsi's counsel antagonized the court is meritless. Finally, the record does not show that Corsi's attorney elicited false and misleading testimony as to the racial makeup of the neighborhood.[7] None of these alleged tactics, considered separately or together, prejudiced the defense so as to justify remittitur or a new trial.
 
 C. Corder's and Lester's Testimony
 
 9
 The court did not abuse its discretion by admitting Paul Corder's testimony.[8] Although the Devieses argue that a portion of Corder's testimony constituted hearsay and was extremely prejudicial to the defense, Corder testified from his own personal knowledge. His testimony, therefore, was not hearsay. However, it was probably irrelevant as it did not tend to prove anything in issue. Nevertheless, the Devieses did not ask to strike his testimony. Additionally, the Devieses have not shown that this testimony was prejudicial, as it demonstrated nothing.
 
 
 10
 The court did not abuse its discretion by excluding Lester's testimony as to what Ida had told him about complaints received from other tenants about Corsi's parking habits. Lester testified as to his personal observations of Corsi's parking habits and as to his knowledge of Ida's personal observations of Corsi's parking habits. His testimony as to what other tenants had told Ida was double hearsay and, thus, inadmissible. The Devieses cite to no support for their contention that their partnership overcame the double hearsay objection or that the business practice exception rendered admissible Lester's testimony. Furthermore, the Devieses had the opportunity to perpetuate Ida's testimony prior to her death.
 
 D. Same Result Instruction
 
 11
 The district court did not abuse its discretion in refusing to instruct the jury on the same result defense.[9] Its jury charge incorporated the standards set forth in the McDonnell Douglas-Burdine framework. The Devieses do not persuasively argue that this charge was insufficient or misleading, and they cite to no authority that permits the inclusion of the same result defense in housing discrimination actions.
 
 E. Sanctions
 
 12
 The district court did not abuse its discretion in denying the Devieses' motion for sanctions. Although the Devieses claim $2000 in attorney's fees resulting from misstatements in the complaint, they have provided no documentation or other evidence to justify this alleged expense.[10] The record indicates that the inaccuracies were easily corrected at Corsi's deposition.
 
 
 13
 AFFIRMED.
 
 
 14
 WELLFORD, Circuit Judge, concurring in part and dissenting in part:
 
 
 15
 Although I am troubled about the damage award in this case, I concur in large measure with the results reached by the majority. Specifically, I concur in the affirmance of the jury's compensatory damage award, but I dissent from the affirmance of the punitive damage award because I would reduce it from $20,000 to $10,000.
 
 
 16
 It is clear that the defendants did not object to the district court's damages instruction. Accordingly, the majority is correct to point out that Federal Rule of Civil Procedure 51 requires that a party give notice of grounds for objection to a jury instruction in order that the district court may have an opportunity to consider and correct an alleged error. See Libbey-Owens-Ford Co. v. Insurance Co. of North America, 9 F.3d 422, 427 (6th Cir.1993); Guerts v. Barth 892 F.2d 622, 624-25 (7th Cir.1989); W.B. Farms v. Fremont Nat'l Bank and Trust Co., 756 F.2d 663, 667 (8th Cir.1985). However, this failure only deprived the Devieses of the opportunity to object to the legality and content of the instruction. By contrast, as I see it, the Devieses' argument on appeal is that the jury's damage award was against the "manifest weight of the evidence." Therefore, I believe that we can, and should, determine whether there was sufficient evidence to support the jury's award.
 
 
 17
 With regard to the evidence to support the $15,000 compensatory damage award, I find it to be a very close question. The jury's award was far beyond any objective measure of damage to the plaintiff as a result of the defendants' violation of the Act, inasmuch at the proof at trial showed less than $3000 in actual out-of-pocket damages. Obviously, then, the jury's award must have included an emotional distress and humiliation component, which is permissible, see Baumgardner v. Secretary of HUD, 960 F.2d 572, 580-83 (6th Cir.1992), but it seems to me that it was overly generous, especially in light of the court's dismissal of the separate emotional distress count. See Hamilton v. Svatik, 779 F.2d 383 (7th Cir.1985) (stating in an FHA discrimination case that a $12,000 award for intangible injuries "comes very close to being excessive"); see also Baumgardner, 960 F.2d at 583 (allowing a $500 award for emotional distress); Douglas v. Metro Rental Service, 827 F.2d 252 (7th Cir.1985) (reducing a $10,000 award for intangible injuries to $2500 because it was "grossly excessive"). However, since the defendant did not make a "clear showing" of abuse of discretion with regard to liability for and amount of compensatory damages, I would agree that there was no error with respect to the $15,000 award and the court's decision to deny the motion for a new trial. See Agristor Leasing v. A.O. Smith Harvestore Products, Inc., 869 F.2d 264, 268 (6th Cir.1989). I would, therefore, AFFIRM this award.
 
 
 18
 With respect to the evidence to support the allowance of punitive damages, I would initially point out that "[j]udicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." Honda Motor Co. v. Oberg, 114 S.Ct. 2331, 2335 (1994) The district properly charged the jury that punitive damages under the FHA might be permitted if the jury were persuaded that the plaintiff "must demonstrate ... that the Devies' behavior was of such an outrageous nature as to demonstrate malice or willful and wanton behavior ..., [which] refers to a willful and deliberate intent to cause injury to another person." See Hamilton, 779 F.2d at 389 However, I find little proof that the "defendants acted wantonly and wilfully ... or were motivated in their actions by ill will, malice or a desire to injure the plaintiff." Id. (quoting Jeauty v. McKay & Poague, Inc., 496 F.2d 1119, 1121 (7th Cir.1974)).
 
 
 19
 Nevertheless, giving plaintiff the benefit of considerable doubt, I would allow punitive damages, but I would find the $20,000 award excessive. Id. (allowing a jury award of $5,000 in punitive damages in a similar type case). Instead, under all of the circumstances, I would limit the amount of punitive damages to $10,000, which is the maximum penalty allowed in administrative enforcement proceedings of the FHA under § 3612 of the Act. See Secretary of HUD v. Blackwell, 908 F.2d 864 (11th Cir.1990). I would, therefore, REVERSE the punitive damages award and limit the amount to $10,000.
 
 
 20
 I concur in the affirmance on the sanctions issue.
 
 
 
 [1]
 Ida Devies died while this case was pending
 
 
 [2]
 Corsi subsequently withdrew her state fair housing violation allegation and a breach of contract claim
 
 
 [3]
 Williams was dismissed as a plaintiff because he never leased or attempted to lease property from the Devieses. He is now Corsi's husband
 
 
 [4]
 The breach of contract claim concerned the Devieses' failure to return Corsi's security deposit
 
 
 [5]
 Corsi testified that Ida told her that she should have informed the Devieses that she had a boyfriend who was African-American prior to renting a unit. She also produced circumstantial evidence of intentional discrimination, including: the increase of Corsi's rent accompanied by Ida's request to another tenant that she misrepresent to Corsi that her rent also was raised; Corsi was treated differently than other tenants in regard to parking and washing her vehicle and having overnight guests; the Devieses gave Corsi a thirty-day notice to vacate her unit for nonpayment of rent on the day rent was due; in their twenty years of owning over forty rental properties in a multiracial neighborhood, the Devieses had never rented a unit to an African-American
 
 
 [6]
 The Devieses did not object to the court's jury charge addressing compensatory damages
 
 
 [7]
 Corsi's document labelled "Exhibit 12" established that 30.2% of the neighborhood was black. This document was not allowed into evidence because Corsi did not offer it as an exhibit until shortly before trial. Consequently, Corsi attempted to question other witnesses as to the racial makeup of the neighborhood. These witnesses apparently testified as to their individual perceptions of the neighborhood's demographics. The Devieses' failure or refusal to establish the actual racial makeup of the neighborhood is not attributable to Corsi
 
 
 [8]
 Corder lived next door to Corsi when she lived in the Devieses' rental unit. His daughter also leased a rental unit from the Devieses and was a neighbor of Corsi. Corder testified that, in 1990-91, his daughter had an African-American male friend named Otis. Over the Devieses' objection, he further testified that, at some point in time, Otis stopped visiting Corder's daughter at the rental units. He stated, also over the Devieses' objection, that he did not know the reason why Otis stopped visiting his daughter
 
 
 [9]
 The same result defense permits a defendant to demonstrate that even if he or she intended to discriminate, he or she would have made the same decision regarding the plaintiff, even absent discrimination
 
 
 [10]
 Corsi amended her complaint late in the discovery process. Her original complaint stated that Corsi and Williams both lived together in the rental unit; that Lester had filed a previous action against Corsi, in which Corsi prevailed due to malicious prosecution on the part of Lester; that she had been physically, emotionally, and mentally injured by the filing of this previous action; and that Lester had harassed and intimidated Corsi. To the contrary, Williams did not reside at the rental unit; Lester never filed a previous action against Corsi in which Corsi prevailed on a claim of malicious prosecution, and Corsi did not suffer injury from any such action; and Corsi testified that Ida, not Lester, harassed and intimidated her