Stanley WOODBRIDGE (90–3574); James Moss (90–3575); Douglas Hairston (90–3576); Kevin Williams (90–3577), Plaintiffs–Appellants,

v.

Eric DAHLBERG, et al.; Dennis Baker, et al., Defendants–Appellees.

Nos. 90–3574, 90–3575, 90–3576, 90–3577.

United States Court of Appeals, Sixth Circuit.

Argued July 16, 1991.

Decided Jan. 28, 1992.

David A. Wallace (argued and briefed), Graham & James, Washington, D.C., for plaintiffs-appellants.

Ralph P. Cushion, II (argued and briefed), Office of the Atty. Gen. of Ohio, Cleveland, Ohio, for defendants-appellees.

Before BOGGS, Circuit Judge, BROWN, Senior Circuit Judge, and GIBBONS, District Judge.[*]

GIBBONS, District Judge.

Appellants Stanley Woodbridge, James Moss, Douglas Hairston and Kevin Williams were all prisoners at the Ohio State Reformatory (OSR) on February 22, 1987, and on that date participated in a prison protest demonstration. Subsequently, pursuant to 42 U.S.C. § 1983, they sued appellees, who are OSR officials, for alleged deprivations of appellants' constitutional rights arising out of the officials' handling of the demonstration. A jury returned a verdict in favor of appellees. Appellants now argue that the evidence at trial did not support the jury verdict and that the trial court thus abused its discretion in denying their motion for new trial. They also assert that the trial court erred in its jury instruction on supervisory liability.

On February 22, 1987, around 11:00 a.m., a group of seventy to eighty inmates from East Cell Block at OSR, including appellants, refused to return from the prison yard to their cells for a formal count. When the group persisted in its refusal to obey instructions, the duty officer contacted OSR Warden Eric Dahlberg at home. Dahlberg instructed the duty officer to ensure that the other inmates were confined to their cells and to refrain from any action against the dissident inmates until Dahlberg arrived at the prison.

Dahlberg promptly went to OSR. By this time, the inmates had remained in the prison yard on their own volition for two and one-half hours. Dahlberg telephoned the Ohio Director of Correction, Richard Seiter, apprised him of the situation and requested advice. The result of their discussion was a decision to remove the demonstrating inmates from the institution because they posed a threat to OSR security. Force would be used, if necessary, in the

[*] Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

event the inmates continued to refuse compliance with orders of prison officials. The inmates would be transferred to another Ohio institution, Lima Correctional Institution (LCI). Lima could house inmates of the demonstrating inmates' security level and had available cells.

At 2:00 p.m., the designated end of the OSR guards' first shift, Dahlberg ordered the first shift guards to remain at OSR to help deal with the problem. After another fruitless request that the inmates voluntarily return to their cells, Dahlberg ordered the guards to disperse the crowd, handcuff the inmates, and escort them to two fenced recreation areas at OSR. The fenced areas were in close proximity to the area that the inmates had refused to leave. Placing the inmates in the fenced areas confined them to one area and also localized the disturbance. At some point the inmates were forced to lie face down on the ground. At other times, however, they were required to stand and face the inside of the fence.

After the protesting inmates were subdued in the recreation areas, Dahlberg ordered each inmate medically checked in the gymnasium.[1] The inmates were taken into the gymnasium for the medical checks in groups no larger than four at one time. Completing the medical checks took between forty-five minutes and one hour.

During this time, Dahlberg communicated with Seiter, who determined that LCI would send vans to transport the inmates to LCI. Officers from LCI arrived at OSR at 5:00 p.m. The vehicles were searched upon arrival. Subsequently, LCI officers drove the vehicles onto the OSR grounds and parked within five feet of the fenced areas where the inmates awaited transport.

Prior to loading the inmates into the vans, LCI officials strip searched each inmate.[2] A few inmates at a time were strip searched in the middle of the fenced area while the inmates who had not been strip searched faced the inside of the fence. After being searched, each inmate put on an orange coverall and entered one of the heated vans. Each strip search lasted less than one minute and it took approximately one hour to complete all the searches.

At the time the inmates were moved into the fenced areas, the temperature in Mansfield was forty-three degrees. By 6:00 p.m., the approximate time the strip searches were concluded, it had dropped to thirty-eight degrees.

Appellants sued various OSR officials on multiple theories based on their actions on February 22, 1987.[3] Some of the claims were disposed of by summary judgment or directed verdict at the close of appellants' proof. Fourth and Eighth Amendment claims against the appellees relating to the outdoor detention and the strip searches were submitted to the jury.

The jury returned special verdicts in favor of all appellees. Appellants moved for a new trial, on the basis that the jury's verdict was against the manifest weight of the evidence. The district court denied the motion.

Appellants first argue that the district court abused its discretion in denying their motion for a new trial, in which appellants

1. Pursuant to standard procedure whenever force is used, each inmate is medically checked once institutional security is reinstated.

2. Pursuant to standard institutional policy and procedure, all inmates were to be strip searched prior to being transported in order to ensure that they were not carrying contraband.

3. Appellant Stanley Woodbridge named as defendants in his lawsuit Eric G. Dahlberg, Superintendent of OSR, Dennis A. Baker, Lieutenant at OSR, John Cantrell, Correctional Officer at OSR, James Minard, Correctional Officer at OSR, Jerry Hunt, Captain at LCI, John E. Allen, Correctional Officer at LCI, D.W. May, Correc-

tional Officer at LCI (upon whom service was not obtained), Charles W. Golliher, Correctional Officer at LCI, and Ricky Edwards, Correctional Officer at LCI.

Appellant James Moss named as defendants in his lawsuit Dahlberg, Baker, Cantrell, Hunt, Allen, May, Golliher, and Edwards. Appellant Douglas Hairston II named as defendants Dahlberg, Baker, Hunt, Allen, May, Golliher, and Edwards, as well as Donald Adkins and Robert Wolfe, both Correctional Officers at OSR. Finally, appellant Kevin Williams named as defendants Dahlberg, Baker, Minard, Hunt, Allen, May, Golliher, and Edwards, as well as Richard Zerby, Correctional Officer at OSR, and Judy Jordan, a nurse at OSR.

argued that the verdict was against the manifest weight of the evidence. A denial of a motion for new trial attacking a verdict as being against the weight of the evidence is reviewed for abuse of discretion. *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir.1991) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)). The district court, in considering a motion for a new trial, must weigh the evidence, compare the opposing proofs, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. *Id.* (citing *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)). It should deny the motion if the verdict is one which could reasonably have been reached. *Id.* The verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. *Id. See also Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967).

■ On appeal, appellants argue that the jury's verdict on their Fourth and Eighth Amendment claims is against the manifest weight of the evidence and thus assert that the district court abused its discretion in denying their motion for new trial. With respect to their claim concerning the circumstances of their detention in the fenced areas, they point to evidence in the record that the inmates were handcuffed, made to lie on the ground, and forced to remain outside in forty-degree temperatures for three to four hours. In support of their argument that the strip searches were unreasonable searches and constituted an unnecessary and wanton infliction of pain without penological justification, they rely on proof about the circumstances of those searches.

Appellees contend that the jury's verdict is consistent with the evidence presented at trial. The proof was that a large group of inmates, including the appellants, had refused to report to their cells as instructed. As a consequence, appellee Dahlberg testified, the rest of the institution was held hostage to their actions because the remaining more than 2,000 inmates were unable to engage in their scheduled activities, which included recreation, some program activities, and work activities. Appellees assert that the proof showed that the actions of the prison officials were necessary, in view of the potentially dangerous situation at OSR on February 22, 1987.

In denying the appellants' motion for a new trial, the district court, after referring to the judge's obligation to set aside a verdict against the manifest weight of the evidence, stated:

> In applying the standard of the Sixth Circuit Court of Appeals with respect to plaintiffs' motion for a new trial to the evidence presented at trial, this Court must conclude that the answers to the interrogatories arrived at by the jury are answers that could have reasonably been reached based upon the evidence presented at trial. Based upon this finding, the Court must deny plaintiffs' motion for a new trial.

Joint Appendix at 145. The district court clearly applied the correct legal standard in considering the appellants' motion for a new trial. It also reached the correct result in denying the motion for new trial and did not abuse its discretion. The jury's verdicts were ones which could reasonably have been reached, based on the evidence.

■ Next, appellants argue that the district court's jury instruction failed to fairly and adequately submit the issue of supervisory liability to the jury, and failed to set forth pertinent principles of law relating to supervisory liability.[4] Specifically, appel-

---

**4.** Appellants' Fourth and Eighth Amendment claims were directed not only against the various officers who allegedly detained them outside and subjected them to strip searches, but also against appellees Dahlberg, Baker and Hunt, who acted in a supervisory capacity during the events of February 22, 1987.

Although the jury found in favor of the nonsupervisory defendants, we must still address the issue concerning the instruction on supervisory liability. As appellants assert, the jury could have found constitutional violations other than those alleged to have been committed by the nonsupervisory defendants and these could

lants assert that the district court failed to include language that a supervisor may be liable if the supervisor "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." [5] We conclude, however, that appellants failed to raise this objection in the trial court and therefore cannot now raise this issue on appeal.

Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." In arguing that they met the requirements of Rule 51, appellants rely on this court's precedent stating that Rule 51 "does not require formal objections," but "is satisfied only if it is clear that the judge was made aware of the possible error in, or omission from, the instructions." *Gradsky v. Sperry Rand Corp.*, 489 F.2d 502, 503 (6th Cir.1973). *See also Goostree v. Tennessee*, 796 F.2d 854, 862 n. 3 (6th Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987).

In *Gradsky*, this court held that a party's submission of proposed jury instructions and objections to the opposing party's proposed instructions satisfied the requirements of Rule 51 and preserved the record properly for appeal of the trial court's failure to give requested instructions and giving of instructions to which the party objected. Appellants argue that they met the standard of *Gradsky* by filing proposed jury instructions which included the omitted language, opposing appellees' summary judgment motions, and orally opposing appellees' motions for a directed verdict.

The court disagrees with appellants' position. Appellants did submit a proposed jury instruction with their pre-trial brief which contained the language that was ultimately omitted from the charge. The judge's discussion of the jury instructions with counsel plainly reveals, however, that the trial judge was not made aware of the error about which appellants now complain. Moreover, when this court's decisions subsequent to *Gradsky* are also considered, a more complete statement of a party's obligation under Rule 51 emerges.

The trial court discussed the jury charge with counsel at some length prior to closing argument.[6] After raising with counsel for both sides an issue relating to punitive damages, the court then turned to counsel for appellant and said, "Now, having said all that, does the plaintiff have any objection to the charge?" Appellant's counsel responded affirmatively and stated an objection to a portion of the charge concerning the Eighth Amendment claim. After the court overruled that objection, the trial

---

have provided the basis for a finding of liability on the part of the supervisory defendants, assuming the other requirements for supervisory liability were met. The trial court recognized this when, upon appellants' request, it modified its supervisory liability instruction after it was read. *See* discussion *infra* at 1236–1237.

**5.** The jury instruction given on supervisory liability was as follows:

Plaintiffs' Fourth and Eighth Amendment claims are directed not only against the various officers who allegedly actually physically abused them, detained them outside and subjected them to strip searches in the presence of female personnel and/or outside, but also against Defendants Dahlberg, Baker, and Hunt, who acted in a supervisory capacity during the events of February 22, 1987. While actual, personal participation is not the only basis for liability under 42 United States Code § 1983, there must be some causal connection between the defendant supervisors'

conduct and the alleged constitutional violations. That is, the supervisory defendants must have caused the alleged constitutional deprivation. A supervisor may cause a constitutional deprivation if he sets into motion a series of acts by others which he knows or reasonably should know would result in a deprivation of constitutional rights. However, negligent conduct alone on the part of a supervisory official will not expose the supervisor to liability. Accordingly, you cannot find supervisory liability if you do not find that the correctional officers under their control who are defendants in this case committed constitutional violations. Joint Appendix at 861–62.

**6.** Prior to this discussion the court had furnished to counsel for their review the jury instructions drafted by the court. According to the trial transcript, counsel had about an hour to read the instructions before discussing them with the court.

court said, "Anything else?" Appellant's counsel responded negatively.

The trial court then turned to counsel for appellees and asked for objections. There were no objections at that point by appellees' counsel, but appellants' counsel spoke again and brought to the court's attention a number of typographical errors and one additional substantive area in which appellants requested a change in the instruction. The supervisory liability instruction was not mentioned in this entire pre-argument discussion between the court and counsel. Appellants' counsel also did not at any point advise the court that he objected to the failure to give his requested instruction on supervisory liability or any other topic. The trial court accommodated a number of the parties' objections by making changes in the instructions.

After the court read the instructions to the jury, the court asked for any further objections. Counsel for appellants specifically raised an objection to the supervisory liability instructions. The objection related to the trial court's instruction to the jury that there could be no finding of supervisory liability unless the supervisors' subordinates who were defendants committed constitutional violations. In response to the objection, the trial court changed the instruction to indicate that it was not necessary for the subordinates committing constitutional violations to be defendants. Appellants' counsel did not mention the omission of the language about which appellants now complain.

Considering the entire discussion between the trial court and the attorneys in this case concerning the jury instructions, the court finds that the trial court was not made aware of the omission from the instructions. The trial court modified the supervisory liability instruction in several respects to accommodate appellants' concerns. Changes in the instructions were made before the court read the instructions to the jury and after their reading. The supervisory liability instruction itself was changed at appellants' request after the reading of the instructions. Appellants' counsel specifically advised the court that

there were no other objections to the instructions, without mentioning the requested instructions submitted earlier. The court's reasonable conclusion would have been that appellants were satisfied with the instruction ultimately given. It was not made aware that an objection remained.

The situation in *Gradsky* was not like that presented here. In *Gradsky* there was a proposed instruction which the trial court refused to give and objections to the opposing party's requested instruction. Although there were several pre-charge conferences, this court did not find any of the specific discussion during those conferences sufficiently pertinent to its decision to mention the content of the conferences in its opinion. Here, where the trial court made every effort to draft an instruction acceptable to appellants and incorporated appellants' requested changes into the instruction, the content of the discussion is extremely important. Under the circumstances of this case appellants were required to let the trial court know that the redrafted charge was still unacceptable. Their failure to do so is a failure to comply with Rule 51's requirement that they object before the jury begins deliberations, "stating distinctly the matter objected to and the grounds of the objection."

This result is entirely consistent with this court's most recent decisions relating to the preservation of a claimed error in jury instructions for appellate review. In both *Murphy v. Owens–Illinois, Inc.*, 779 F.2d 340, 345–46 (6th Cir.1985), and *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985), this court ruled that a party had not preserved a claim of error in the jury instruction for appellate review under circumstances somewhat similar to those here.

In *Murphy* counsel excepted to a jury instruction at a pre-charge conference, at which many issues relating to the instructions were discussed, saying that the instruction did not apply to the case on trial. The trial judge then gave his reasons for including the instruction. No further discussion about this part of the charge occurred. Counsel did not object to this part

of the charge when the lawyers were called to the bench after the instructions were read. This court held that the issue concerning the charge was not preserved for appellate review and, citing *Dunn v. St. Louis–San Francisco Ry. Co.*, 370 F.2d 681, 684 (10th Cir.1966), noted that "[t]he objections should be made not only before the jury retires, but after the charge is given." 779 F.2d at 346.

In *Roberts* this court rejected a party's argument that he preserved a claimed error in the jury instruction for appellate review by "implicitly" objecting through offering a different instruction. 773 F.2d at 723. Without citing *Gradsky*, the court acknowledged that Rule 51 could be satisfied by less than formal objection. Formal objection is not required, however, " 'only if it is clear that the judge was made aware of the possible error in or omission from the instructions.' " *Id.* (citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank*, 738 F.2d 163 (6th Cir.1984)).

■ The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury. *See Murphy*, 779 F.2d at 346. An exception to this rule occurs only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission. *See Roberts*, 773 F.2d at 723. While this court in *Gradsky* found circumstances warranting application of the exception, no such circumstances exist in this case.

■ Because appellants did not object as required by Rule 51, the jury verdict can be reversed only if there was plain error in the jury instructions. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987); *Batesole v. Stratford*, 505 F.2d 804, 808 (6th Cir.1974). While the jury instructions would have been clearer if the requested language had been included, the failure to include it was not clear error. The instruction given was an accurate statement of the law; including the omitted language would have had

the effect only of making the statement more complete.

The judgment of the trial court is AFFIRMED.