89 F.3d 834
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bill D. LETCHER, Plaintiff-Appellant,
v.
SHARP ELECTRONICS CORP.; Tsutomu Takeuchi, Defendants-Appellees.
 No. 95-5040.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1996.
 
 Before: KEITH, NELSON and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff Bill Letcher appeals the district court's October 3, 1994 judgment for the defendants Sharp Electronics Corporation and Tsutomu Takeuchi. Judgment was entered upon a jury verdict for the defendants on Letcher's claims of age and national origin discrimination. Letcher claims the court erred in excluding from evidence certain documents and by failing to instruct the jury under the Price Waterhouse rule. For the reasons that follow, we affirm.
 
 I. FACTS
 
 2
 Letcher is a white male born September 25, 1942. In 1984, he began work as manager of Sharp's T.V. engineering department. Takeuchi is an Asian male who moved to Memphis to become the president of Sharp in February 1990. In February 1991, Takeuchi received a complaint from a department manager about Letcher's work performance. Takeuchi instructed Letcher's supervisor, an Asian male named Terada, to provide guidance to Letcher. In March, Terada and Sharp's manager of human resources, T.C. Jones,[1] approached Takeuchi concerning Letcher's behavior when a problem arose on Sharp's manufacturing line. Jones and Terada informed Takeuchi that after an engineering problem surfaced on the manufacturing line, Letcher did nothing to resolve the problem. Even though the problem caused the line to shut down, Letcher went home while other employees, including his supervisor, worked to correct the problem. Although Terada stated that he did not tell Letcher to stay and work on the problem, Jones stated that Letcher should have known to stay because he was a manager. Upon Jones' recommendation, Takeuchi discharged Letcher on March 28, 1991. After his discharge, Letcher was replaced by a younger Japanese male.
 
 
 3
 Letcher filed a complaint on March 6, 1992, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; and the Tennessee Human Rights Act, TENN.CODE ANN. § 4-21-101 et seq. Specifically, Letcher alleged that Takeuchi, as Sharp's president and final decision-maker, discriminated against him on the basis of age and/or national origin. After a five-day trial, the jury returned a verdict in favor of the defendants. The district court entered judgment on October 3, 1994. Letcher's Rule 59 motion to alter the judgment or grant a new trial was denied.
 
 
 4
 At trial, several employees testified to the deficiency of Letcher's work performance. In response, Letcher offered the testimony of Steve Kalakoc, a former manager at Sharp. Kalakoc stated that Takeuchi had made discriminatory statements to him concerning older employees at Sharp. Kalakoc testified that he recommended to Takeuchi in early 1991 that a temporary employee, Edwards, be hired as full-time. Takeuchi refused, allegedly stating, "No, you can't hire her, she's too old." Edwards was, in fact, eventually hired by Sharp. Kalakoc also testified that he recommended to Takeuchi that another employee, Lam, be transferred to Kalakoc's department, and Takeuchi again allegedly refused, citing that the employee was "too old." Lam was eventually transferred to Kalakoc's department. Finally, Kalakoc testified that Takeuchi approached him to pressure a fifty-four year old secretary, Bower, to resign so that Takeuchi could replace her with someone younger. Bower ultimately resigned. In all three situations, Kalakoc informed Jones of Takeuchi's alleged comments that the employees were "too old." Takeuchi denied making the statements. Letcher asserts on appeal that these comments were direct evidence sufficient to entitle him to a burden-shifting instruction under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (holding that where plaintiff presents direct evidence that unlawful discrimination motivated employer's actions, burden of persuasion shifts to defendant employer).
 
 
 5
 Additionally, Letcher challenges the trial court's refusal to admit two documents as exhibits. The first document contained Jones' affidavit to the EEOC that recounted Kalakoc's allegations and stated in pertinent part:
 
 
 6
 Takeuchi wanted to hire Edwards as a buyer and not a secretary. When (s)he came to me about this, there was no mention of age. In fact, the Human Resources Department was criticized for taking too long to hire Edwards.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Harry Terada complained about Letcher, and I suggested to give him a write up on everything he did.
 
 
 10
 Letcher went home when he was aware of a problem in engineering manufacturing. Terada [Letcher's supervisor] took up for Letcher saying he did not tell Letcher to stay.
 
 
 11
 Although the substance of the affidavit was belabored by thorough testimony at trial, Letcher argues that the district court should have allowed the jury to see the affidavit as an exhibit to highlight purported contradictions in the defendants' and Jones' testimony.
 
 
 12
 Similarly, Letcher argues that the district court erroneously excluded a second document which contained handwritten notes of a Tennessee Department of Employment Security employee named Haynes. The entire notes provided:
 
 
 13
 Mr. Yurchick [a Sharp employee in personnel] called 5/8/91 stated Mr. Letcher did not meet the expectations of Japanese management. There was no misconduct. He would be asked to do things and he did not perform his work to the satisfaction of the Japanese managers he reported to.
 
 
 14
 Like Jones' affidavit, the contents of Haynes' notes were presented to the jury through extensive testimony.
 
 II. INSTRUCTIONS
 A. Letcher's failure to object
 
 15
 Federal Rule of Civil Procedure 51 provides in relevant part:
 
 Instructions to Jury: Objection
 
 16
 ... No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 17
 Counsel for Letcher concedes that he did not object to the instructions at the close of evidence. Letcher's counsel instead objected to a different instruction concerning employment at will. After the district court read the instructions to the jury, counsel for both sides were given an opportunity to raise specific objections within the court's chambers. Letcher offered none. In his post-trial Rule 59 motion, there was no reference to the jury instructions. Significantly, his Rule 59 motion challenged the district court's exclusion of Jones' affidavit and Haynes' notes. Letcher's failure to object constitutes waiver of this issue on appeal. See Libbey-Owens-Ford Co. v. Insurance Co. of N. Am., 9 F.3d 422, 427 (6th Cir.1993) (holding appellant must have objected to jury instructions to preserve issue for appeal); Jones v. Lewis, 957 F.2d 260, 263 (6th Cir.) (same), cert. denied, 506 U.S. 841 (1992).
 
 
 18
 Although he did not object at the close of evidence, Letcher alleges that he implicitly objected by offering a different instruction and raising the issue in a pre-trial letter of September 20, 1994, to the district court. This court has previously rejected similar arguments. Libbey-Owens-Ford, 9 F.3d at 427-28; Woodbridge v. Dahlberg, 954 F.2d 1231, 1237 (6th Cir.1992); but see Katch v. Speidel, 746 F.2d 1136, 1139 (6th Cir.1984) ("Rule 51 is not always strictly enforced according to the letter of the Rule. For instance, oral, rather than written, requests have been found sufficient to inform the court of the correct point of law involved.") (citations omitted). The Woodbridge court provided:
 
 
 19
 The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury.... An exception to this rule occurs only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission.
 
 
 20
 954 F.2d at 1237 (citations omitted); accord Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit, 738 F.2d 163, 167 (6th Cir.1984) (holding objection was properly preserved because party registered objection to proposed instruction during discussion in judge's chambers). Letcher argues that the district court was made aware of the purported error in the burden-shifting instruction by the September 20, 1994 letter. The record does not support Letcher's argument. See Woodbridge, 954 F.2d at 1235-36 (finding that trial court was not made aware of error in instructions considering entire discussion between court and attorneys).
 
 
 21
 Hence, the allegedly erroneous instruction may be reversed only if deemed "plain error." Id. at 1237 ("Because appellant[ ] did not object as required by Rule 51, the jury verdict can be reversed only if there was plain error in the jury instructions.") (citations omitted). The plain error doctrine requires reversal only where: 1) error occurred in the district court; 2) the error was plain; 3) the plain error affects substantial rights; and 4) the appellate court concludes that the plain error seriously affected the fairness, integrity, or reputation of the proceedings. United States v. Sherrod, 33 F.3d 723, 725 (6th Cir.1994). The error must be so egregious as to constitute a miscarriage of justice. United States v. Wilkinson, 26 F.3d 623, 625 (6th Cir.1994). The record overwhelmingly supports the jury's conclusion that Sharp discharged Letcher for his deficient performance rather than his age or national origin. Thus, the lack of a Price Waterhouse instruction was not a miscarriage of justice.
 
 B. Price Waterhouse
 
 22
 Assuming Letcher had preserved the issue, a Price Waterhouse instruction was not required because Letcher failed to present direct evidence of discriminatory intent linked to Sharp's decision to fire him. Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 514 (6th Cir.1991) (holding that plaintiff must prove that age was determining factor in adverse action that employer took against him). The Price Waterhouse Court noted that a stray remark unrelated to the decisional process would be inadequate to shift the burden of proof to the employer. 490 U.S. at 277 (O'Connor, J., concurring). Sharp and Takeuchi present the better argument on this issue.
 
 
 23
 The district court rejected Letcher's "direct" evidence of discrimination because the comments did not relate to the specific decision to fire Letcher. The district court's view is supported by Cesaro v. Lakeville Community Sch. Dist., 953 F.2d 252 (6th Cir.), cert. denied, 506 U.S. 867 (1992). In Cesaro, this court held that the alleged discrimination must be a factor in the adverse employment decision "at the moment it was made." Id. at 254-55. Thus, if at the moment of Takeuchi's decision to discharge Letcher one of the reasons was his age, then age discrimination played a motivating part in the decision. Id. at 254. The district court noted that none of the alleged comments related in any way to the particular decision to discharge Letcher. Takeuchi's comments were neither made in close temporal nor germane proximity to Letcher's discharge. Hence, the district court's findings are plausible in light of the record, and Letcher's argument fails. Blalock v. Metals Trades, Inc., 775 F.2d 703, 706 (6th Cir.1985) (holding that predominant issue of intent in Title VII case is factual and appellate court is obliged to defer to district court's factual findings if plausible in light of entire record), cert. denied, 490 U.S. 1064 (1989).
 
 III. EVIDENCE
 
 24
 The district court's evidentiary decisions are reviewed for an abuse of discretion and should be reversed only when such an abuse has caused more than harmless error. Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir.1994) (citing case law & FED.R.CIV.P. 61). Letcher asserts that the district court erroneously excluded two documents from evidence. First, the district court refused to allow Jones' affidavit to be admitted as an exhibit because it was hearsay. The original declarant, Takeuchi, made statements that certain employees were "too old." The second statement in the affidavit, Kalakoc's, conveys the substance of Takeuchi's comments. Jones' affidavit recounts what Kalakoc said concerning Takeuchi's comments. Letcher argues that this evidence was not hearsay, as it was admissible under Fed.R.Evid. 801(d)(2).
 
 
 25
 We need not resolve that issue because the substance of Jones' affidavit was revealed to the jury through extensive testimony. Thus, the affidavit itself would have been cumulative evidence, and any alleged error by the district court was harmless to Letcher's case. See Zaken v. Boerer, 964 F.2d 1323 (2d Cir.), cert. denied, 506 U.S. 975 (1992) (holding trial court has broad discretion under Rule 403 to exclude evidence when admission would result in presentation of repetitious proof).
 
 
 26
 Letcher also assigns error to the district court's refusal to admit into evidence Haynes' notes under Federal Rule of Evidence 803(5). Pursuant to Rule 803(5), the recorded recollection doctrine allows the substance of a memorandum to be read to the jury under certain circumstances.[2] United States v. Porter, 986 F.2d 1014, 1016-17 (6th Cir.), cert. denied, 114 S.Ct. 347 (1993). Haynes essentially read the contents of her notes to the jury. Regardless of whether Haynes' notes should have been received as an exhibit, there was abundant evidence dissecting the contents of her notes.[3] Humble v. Mountain State Constr. Co., 441 F.2d 816, 819 (6th Cir.1971) (holding party suffered no prejudice from exclusion of cumulative evidence). Thus, even if the two documents would not have been cumulative evidence, any error in the district court's refusal to admit the documents as exhibits was harmless because the jury was fully apprised of the contents. FED.R.CIV.P. 61; United States v. Lashmett, 965 F.2d 179, 182-83 (7th Cir.1992).
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Jones is a black male
 
 
 [2]
 Rule 803(5) also allows the memorandum to be admitted as an exhibit if offered by an adverse party
 
 
 [3]
 There was some question as to whether a Tennessee statute precluded Haynes' notes from being revealed at all, either orally or by exhibition. Despite the Tennessee statute, the district court allowed Letcher to reveal the contents of the notes to the jury, and any error in excluding the notes themselves was therefore harmless