NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0220n.06
Filed: March 29, 2005

Case No. 03-1172, 03-1311, 03-1182

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EATON AEROSPACE, L.L.C., | ) | |
| | ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SL MONTEVIDEO TECHNOLOGY, INC., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |

BEFORE: SILER, BATCHELDER, and ROGERS, CIRCUIT JUDGES.

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiff/Cross-Appellee Eaton Aerospace, L.L.C, ("Eaton") appeals the district court's refusal to grant a new trial on damages after a jury found Defendant-Appellee/Cross-Appellant SL Montevideo Technology, Inc. ("Montevideo") liable for breach of express and implied warranties and awarded Eaton $650,000 in damages. Eaton argues that it is entitled to a new trial on the issue of damages because 1) Montevideo's repeated violations of the district court's *in limine* rulings prejudiced the jury; 2) the district court erred in refusing to give Eaton's proposed jury instructions; and 3) the jury's award of only $650,000 in damages was against the clear weight of the evidence. Eaton also assigns as error the district court's denial of its motion for sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent authority to impose sanctions. We AFFIRM the district court's denial of a new trial on damages because Montevideo's violation of the district court's *in limine* rulings did not prejudice Eaton, the district court's jury

instructions did not constitute plain error, and a reasonable juror could award Eaton $650,000 in damages. We also hold that the district court did not abuse its discretion in failing to sanction Montevideo's counsel. Accordingly, we need not consider Montevideo's cross-appeal, which asks this court to overturn the district court's exclusion of certain pieces of evidence in the event of a new trial on damages.

## I.

Eaton and Montevideo both manufacture electronic airplane parts. Montevideo contracted with Eaton to produce direct-current brushless motors ("DCBMs" or "motors"). The DCBMs were designed and manufactured by Montevideo and were intended to be used by Eaton as a component of a Stabilizer Trim Motor ("STM") designed and manufactured by Eaton. STMs allow airplanes to change altitudes. The Boeing Company ("Boeing") purchased a quantity of STMs from Eaton and installed them in its model 737 airplanes. Eaton's STMs had two different sets of problems. First, beginning late in 1997, the STMs exhibited malfunctions not related to Montevideo's DCBMs. Boeing determined that these malfunctions required Eaton to perform a "retrofit," i.e., a recall and repair of the STMs, which was to begin in the spring of 2000. Boeing compensated Eaton $3 million for the costs of the retrofit because Boeing bore some responsibility for the STMs' malfunctions.

Second, the STMs began having problems in 1999 that were caused by defective bearings used in Montevideo's DCBMs. Thomas Blair, an Eaton engineer, testified that 159 of Montevideo's DCBMs failed beginning early in 1999; the DCBM failures caused the STMs to malfunction. In late 1999, Boeing, Eaton, and Montevideo agreed that Montevideo should redesign its DCBM. Eaton's warranty to Boeing required Eaton to retrofit the STMs that it had already sold to Boeing utilizing the redesigned DCBM.

Eaton filed this diversity action against Montevideo, claiming breach of the express warranty that the DCBMs met Eaton's performance specifications, and breach of the implied warranty of merchantability. The district court granted partial summary judgment to Eaton, holding that Montevideo had sold the DCBMs to Eaton with both the express and implied warranties claimed by Eaton. The claims for breach of those warranties and for damages proceeded to trial.

## A.    Eaton's claimed damages.

At trial, Eaton submitted a "claim summary," which alleged that it incurred $3,872,102 in costs associated with the defective Montevideo motors. Michael Crown, Eaton's Senior Financial Analyst, was the only witness to testify on damages. Crown testified that Eaton incurred expenses of $662,073 in dealing with the 159 dysfunctional DCBMs, including the cost of fixing the STMs with the dysfunctional DCBMs and the losses Eaton incurred because the defective DCBMs had ruined some STMs. Crown also testified that Eaton incurred costs for labor and materials associated with retrofitting the STMs ($2,068,772); providing Boeing with functioning STMs to use while Eaton performed the retrofit ($438,048); redesigning the DCBM ($400,860); additional personnel costs ($109,309); and Montevideo's failure to install in the DCBMs "spring washers" that were required by Eaton's design ($193,040).

## B.    Montevideo's violations of the district court's *in limine* rulings.

On October 1, 2002, Eaton filed a Motion *in limine* based on FED. R. EVID. ("FRE") 401, 402, and 403, which sought to exclude evidence and argument concerning Eaton's relationship with Boeing and Montevideo's allegations that Eaton had acted in bad faith or was contributorily negligent. During the Final Pretrial Conference, the district court ruled that "there appears to be some testimony as to Boeing's relationship with Eaton as it pertains to the bearings and the testings

of this motor" that is relevant to whether Montevideo's DCBM was merchantable as warranted. However, "any other problems with the STMs of Eaton's and Boeing's is not relevant," because "Boeing's contract with Eaton is not *per se* relevant." The district court also ruled that Eaton's alleged negligence and assumption of risk were not relevant and that Montevideo could not use Eaton's failure to perform tests required by Boeing as "a sword." Finally, the district court ruled that evidence of payments by Boeing to Eaton was irrelevant and "highly prejudicial" and forbade Montevideo from arguing that Eaton acted "in bad faith."

The record demonstrates that Montevideo's counsel violated the *in limine* rulings on numerous occasions, including repeatedly, during cross-examination of various witnesses, using questions and portions of depositions indicating that the STMs had problems unrelated to the DCBMs; suggesting during closing argument that Eaton had acted in bad faith; and questioning witnesses regarding payments made from Boeing to Eaton.

**C.      Jury instructions.**

At the conclusion of Montevideo's case, Eaton submitted proposed jury instructions listing a number of defenses that the jury could not properly consider, including Eaton's assumption of risk, Eaton's failure to test the DCBMs, STM malfunctions unrelated to Montevideo's DCBM, and Eaton's bad faith. The court refused to give these instructions, and instead instructed the jury on the elements of breach of express and implied warranty. Eaton did not object to the instructions actually given by the court or to the jury verdict form provided to the jury.

At the conclusion of the evidence, the jury found Montevideo liable for breach of express and implied warranties and returned a verdict of $650,000 in damages in favor of Eaton. Eaton filed a FED. R. CIV. P. 59 motion for a new trial on damages on grounds that 1) Eaton had been prejudiced

-4-

by Montevideo's violation of pretrial rulings; 2) the jury's verdict on damages was against the weight of the evidence; and 3) the district court's jury instructions failed to instruct the jury on matters that could not properly be used by Montevideo as defenses. The district court denied this motion on January 2, 2003, and Eaton filed a notice of appeal. On February 20, 2003, the district court denied Eaton's 28 U.S.C. § 1927 motion for sanctions against Montevideo, which was likewise based on Eaton's claims of prejudice as a result of Montevideo's violation of pretrial rulings. Eaton's timely appeal followed on March 11, 2003.

## II.

Eaton asserts that the district court erroneously denied its motion for a new trial on damages based on Montevideo's repeated violations of the district court's *in limine* rulings. We review a district court's denial of a motion for new trial for abuse of discretion. *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994). The court of appeals will find an abuse of discretion when it reaches "a definite and firm conviction that the [trial] court committed a clear error of judgment." *LaPerriere v. International Union, United Auto., Aerospace & Agr. Implement Workers*, 348 F.3d 127, 132-133 (6th Cir. 2003).

A new trial will be granted based on attorney misconduct where there is "a reasonable probability that the verdict of a jury has been influenced by such conduct." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (quoting *Twachtman v. Connelly*, 106 F.2d 501, 508-09 (6th Cir. 1939)); *see also Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 387 (6th Cir. 1993). In determining the existence of such a "reasonable probability" the court must examine "on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in

which the parties and the court treated the comments, the strength of the case, and the verdict itself." *City of Cleveland*, 624 F.2d at 756.

The record is replete with examples of the misconduct of Montevideo's counsel during trial. We cannot find, however, that the district court committed a clear error of judgment when it found that Eaton did not demonstrate that "harmful prejudice" resulted from the misconduct. In this Circuit, "[t]he determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court." *Twachtman,* 106 F.2d at 509. Judge Bell was in a better position to determine exactly what the jury heard and how much influence, if any, Montevideo's comments had on the jurors. Indeed, "[t]he trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *City of Cleveland*, 624 F.2d at 756 (quoting *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir. 1975)).

Two of the *City of Cleveland* factors which can be examined reasonably effectively by the court of appeals weigh in favor of upholding the trial court's decision: the verdict and the manner in which the trial court treated the comments. Despite Montevideo's misconduct, the jury returned a verdict for Eaton. Eaton carries the burden of proving that the misconduct caused the jury to award damages in a lesser amount than it otherwise would have, but has failed to do so. The trial court repeatedly sustained Eaton's objections and at one point, even told defense counsel, in the presence of the jury, that matters into which counsel was inquiring were not the subject of the litigation. The district court did not abuse its discretion by refusing to grant Eaton a new trial on damages based on Montevideo's violations of the district court's *in limine* rulings.

**III.**

Eaton appeals the district court's denial of its motion for a new trial on damages asserting that the district court erroneously refused to give Eaton's requested jury instructions. "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." FED. R. CIV. P. 51. In light of Rule 51, we review for plain error a district court's refusal to give a party's requested jury instructions when that party failed to raise an objection to the district court's instructions. *See Woodbridge v. Dahlberg*, 954 F.2d 1231, 1235-7 (6th Cir. 1992); *Chonich v. Wayne Co. Comm. Coll.*, 973 F.2d 1271, 1275 (6th Cir. 1992). A party will not escape plain error review under Rule 51 by merely proposing jury instructions different from those given. *See Woodbridge*, 954 F.2d at 1235-7, and *Chonich*, 973 F.2d at 1275 (applying plain error in appeals challenging the trial courts' jury instructions when the Plaintiffs proposed different jury instructions from those given and failed to make an express objection after the instructions were given)*; Letcher v. Sharp Electronics Corp.,* No. 95-5040, 1996 WL 306553 at *3 (6th Cir. June 6, 1996) (rejecting counsel's argument that he constructively objected to jury instructions by offering proposed instructions).

We will review the district court's jury instructions for plain error because neither the record nor Eaton's briefs indicate that it registered an objection. As in *Woodbridge* and *Chonich*, Eaton offered jury instructions different from those actually given, but, when given the opportunity, did not object to the instructions that the district court actually gave. The district court's refusal to give requested jury instructions is reversible error if "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Webster v. Edward D.*

*Jones & Co., L.P.,* 197 F.3d 815, 820 (6th Cir. 1999) (quoting *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997)).

The district court's jury instructions "substantially covered" Eaton's proposed jury instructions. At issue is whether the district court committed plain error when it concluded that Eaton's proposed instructions were covered by the district court's instructions regarding express and implied warranties. The district court instructed that the jury should consider only the particular claims alleged in the plaintiff's complaint for breach of express and implied warranties and the defendant's affirmative defenses to those claims. The court correctly instructed the jury as to the elements of Eaton's breach of warranty claims and the elements of Montevideo's properly raised affirmative defenses. Eaton complains that the court should have enumerated the defenses that the jury was *not* permitted to consider, and its refusal to do so was error. We conclude, however, that because the district court explicitly limited the jury to considering only the claims in the complaint and the properly raised affirmative defenses, the district court's jury instructions "substantially covered" Eaton's proposed jury instructions. We conclude as well that the district court's jury instructions did not impair Eaton's theory of the case, which, as articulated in its complaint, sounds in breach of warranty. Finally, Eaton points to no law—and we have found none—suggesting that otherwise correct jury instructions are made incorrect because they do not include those matters the jury is not permitted to consider. The court's jury instructions were not plainly erroneous.

**IV.**

Eaton argues that the district court's denial of its motion for a new trial on damages was erroneous because the jury's award of only $650,000 was against the clear weight of the evidence. We review for abuse of discretion a district court's denial of a new trial sought on the basis of a jury

verdict allegedly against the weight of the evidence. *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.,* 56 F.3d 726, 734-35 (6th Cir. 1995). An appellate court will deny a motion for new trial if "a reasonable juror could reach that verdict based on the facts and the law." *See Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1082 (6th Cir. 1999).

Eaton argues that no reasonable juror could arrive at a damage figure of $650,000 because Michael Crown, the only witness to testify on damages at trial, stated that Eaton incurred $3,872,102 in costs associated with the defective Montevideo motors. The fact that Crown was the only witness to testify about damages, however, "does not necessarily render the jury's determination on the issue of damages against the great weight of the evidence." *Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001). The trial court instructed the jury that they were free to disregard some or all of a witness's testimony and the jury could reasonably have done so in light of Montevideo's impeachment of Crown's testimony.

In its brief, Montevideo outlines a scenario ("scenario 1") that could lead a reasonable juror to conclude that Eaton was entitled to $650,000 in damages. Eaton ordered 955 DCBMs from Montevideo before it discovered the problems with the bearings. The district court instructed the jury to subtract the actual value of the goods from the value of the goods if they had conformed to the contract. If the jury believed that Eaton paid the market price for conforming and functional DCBMs, and that the DCBMs had no value at the time of acceptance because they were defective, then Eaton's direct breach of contract damages amounted to $625,195. The jury could then have added $24,989 for the "spring washers," which Montevideo admitted were not installed in the DCBMs (13.7 hours of labor spent per unit multiplied by $12.00 per hour of labor costs multiplied by 152 units). Lastly, the jury could have rounded the total – $650,184 – down to $650,000,

rejecting all other consequential damages that Eaton claimed.

Eaton's brief asserts that "scenario 1" omits (1) reasonable expenses incident to nonconformity; (2) replacement and repair costs; and (3) property damage resulting from breach of warranty. These damages, however, are all based on Crown's testimony, which the jury was free to disregard. A reasonable juror could disregard portions of Eaton's case for damages, which was based on the testimony of one witness, who was employed by Eaton, and whose testimony was impeached.

## V.

Eaton appeals the district court's denial of its motion for sanctions under 28 U.S.C. § 1927 and the court's inherent power to impose sanctions. We review for abuse of discretion a trial court's denial of a motion for sanctions under 28 U.S.C. § 1927 and the district court's inherent power to sanction. *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 417 (6th Cir. 1992). Under 28 U.S.C. § 1927 "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously *may* be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (Emphasis added). A finding of bad faith is not required. *Runfola & Associates v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir. 1986)). In addition to the sanctions awardable under 28 U.S.C. § 1927, a district court may award sanctions under its inherent powers when a party acts in bad faith. *Runfola*, 88 F.3d at 368.

While the record shows that Montevideo's counsel misbehaved, the issue is whether this misbehavior caused Eaton to incur excessive costs or expenses. Sanctions under 28 U.S.C. § 1927 are appropriate only when the misconduct "causes additional expense to the opposing party."

-10-

*Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996). Eaton's prayer for sanctions appears to claim that Montevideo's misconduct caused Eaton additional expense in the form of a smaller award of damages than the jury would have awarded in the absence of the misconduct. Eaton, however, has provided no evidence of specific costs that it incurred because of Montevideo's misconduct. Eaton cites no law, and we have found none, that permits an award of sanctions to substitute for amounts that a jury might have, but did not, award. Indeed, Eaton's specific claim here is that it was denied a fair trial because of Montevideo's misconduct, that it is entitled to a new trial on damages as a result, and that Montevideo should therefore be sanctioned. But we have held, as set forth above, that the district court did not err in refusing Eaton's motion for a new trial on damages. Finally, Eaton's observation that the district court denied its motion "without examination, analysis, or explanation that Eaton had not been prejudiced by the misconduct" does not demonstrate an abuse of discretion as nothing requires a court to explain its reasons for not ordering sanctions. *Orlett*, 954 F.2d at 417.

The district court may exercise its inherent power to impose sanctions upon a finding that an attorney "willfully abuse[d] judicial processes" by conduct "tantamount to bad faith" after "fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764-67 (1980). The Supreme Court has explicitly required that sanctions are conditioned on the trial court's making a specific finding of bad faith: "the trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." *Id.* at 767. Eaton is not entitled to attorneys' fees under the court's inherent sanctioning power because the district court did not make a specific finding of bad faith.

For these reasons, we **AFFIRM** the district court's refusal to grant a new trial on damages and its denial of Eaton's request for sanctions. Accordingly, we need not reach the merits of Montevideo's cross-appeal.